Susan M. CANNON (Randall),
Appellant,

v.

James R. CANNON, Respondent.

No. SC 89118.

Supreme Court of Missouri,
En Banc.

April 14, 2009.

William P. Nacy, Georgia A. Mathers, Hanrahan Trapp, P.C., Jefferson City, MO, for Appellant.

Clifford W. Cornell, Brown Cornell Farrow, L.L.C., Jefferson City, MO, Sara C. Michael, Hendren & Andrae, L.L.C., Jefferson City, MO, for Respondent.

Thomas B. Snider, Jefferson City, MO, for Guardian Ad Litem.

LAURA DENVIR STITH, Chief Justice.

Susan Marie Randall appeals the trial court's judgment holding section 452.375.3 unconstitutional as applied to James Randall Cannon and granting Mr. Cannon unsupervised visitation and joint legal and physical custody of the parties' two natural children, M.C. and A.C. Mr. Cannon was convicted of first-degree statutory rape and first-degree statutory sodomy of his then 12–year–old stepdaughter. Section 452.375 RSMo Supp.2006, expressly prohibits a court from awarding unsupervised visitation or custody to a parent convicted of such sexual offenses against a child. The trial court held that this restriction on Mr. Cannon's right to visitation and custody: (1) violates the prohibition in article I, section 13 of Missouri's Constitution against laws that are retrospective in operation and (2) violates article I, section 10 of Missouri's Constitution and the Fifth and Fourteenth Amendments to the United States Constitution because it interferes with Mr. Cannon's fundamental right to associate and maintain a relationship with his children.

This Court reverses and remands. Section 452.375 is not retrospective in its operation merely because its prohibition on unsupervised visitation by child sex offenders was enacted after Mr. Cannon's marriage first was dissolved. At the time of the dissolution, Mr. Cannon was awarded only supervised visitation. He had no right to assume that the visitation laws would remain the same between the time of the dissolution and the time he later sought unsupervised visitation following his release from prison.

Similarly, section 452.375 does not deprive Mr. Cannon of his fundamental right to associate with his children. He still is permitted to associate with them so long as his visits are supervised. In light of his felony conviction for statutory rape and sodomy of a child, the legislature's restriction provides a reasonable balance between his right to associate with his children and the state's *parens patriae* obligation to protect children and to act in their best interests. For these reasons, the trial court erred in holding section 452.375 unconstitutional as applied to Mr. Cannon.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In June 1995, James Cannon married Susan Randall. At the time of their marriage, Ms. Randall had a 10–year–old daughter, S.S., from a previous marriage. During the marriage, the couple had a daughter, M.C., and a son, A.C. Within a year of the marriage, the then 24–year–old Mr. Cannon allegedly began grooming then 11–year–old S.S. for sex. He began raping and sodomizing S.S. in November 1997, when she was 12, and continued to do so until he was arrested in July 1999.

Mr. Cannon initially denied his involvement and claimed that 11–year–old S.S. had made sexual advances towards him. He later admitted his crimes. In December 2000, but before Mr. Cannon pleaded guilty to his crimes, the parties dissolved their marriage. At the time of the dissolution, the law prohibited a person who had

pleaded guilty to such sexual crimes from being awarded custody of the child-victim:

> The court shall not award custody of a child to a parent if such parent has been found guilty of, or pled guilty to, a felony violation of chapter 566, RSMo, *when the child was the victim*. . . .

Sec. 452.375.3, RSMo 2000 (emphasis added). Because defendant's victim, S.S., was not his child, this statute did not apply to Mr. Cannon. His rights to custody and visitation were instead determined under other Missouri statutes governing custody and visitation, including section 452.375.2, which provides, "The court shall determine custody in accordance with the best interests of the child." Section 452.375 creates a preference for joint custody and for frequent, continuing and meaningful contact of both parents with their child, but also provides that a court may limit or restrict such contact where it finds that this is in the best interest of the child. *Id.* That is what occurred at the time of the dissolution in this case. The trial court's December 2000 order determined that it was in the best interests of M.C. and A.C. that their mother, Ms. Randall, be awarded sole legal and physical custody of them and granted Mr. Cannon supervised visitation.

In January 2001, a month after the dissolution decree was entered, Mr. Cannon pled guilty to the felonies of first-degree statutory rape and first-degree statutory sodomy of his stepdaughter, S.S., in violation of section 566.032 and section 566.062, RSMo 1994, and was sentenced to seven years in prison. While in prison, Mr. Cannon completed the Missouri Sexual Offenders Treatment Program. Program directors recommended that, on his release, Mr. Cannon should be supervised when in the presence of underage females. Mr. Cannon was paroled in February 2004 and had supervised visitation with his children pursuant to the dissolution decree. In June 2005, the court modified the decree to allow a different person to supervise Mr. Cannon's visits. The modified decree continued to give Ms. Randall sole legal and physical custody of M.C. and A.C.

On September 18, 2006, Mr. Cannon filed a motion to modify in which he requested that the decree be modified to allow him unsupervised visitation with M.C. and A.C. gradually. At trial, each party presented expert testimony regarding Mr. Cannon's diagnosis of Axis I pedophilia made in late 1999 at the psychiatric ward at St. John's Hospital after Mr. Cannon was caught and arrested.[1] Dr. Bruce Harry, a forensic psychiatrist, testified for Ms. Randall and ultimately diagnosed Mr. Cannon as a pedophile.

In his diagnosis, Dr. Harry found that Mr. Cannon met the three identifiable diagnostic criteria for a pedophile. He said that the three criteria include: (1) that the person "must have over a period of at least six months, recurrent, intense, sexually-arousing fantasies, sexual urges or behaviors involving sexual activity with a prepubescent—or children generally age 13 years or younger; (2) that the person has acted on these urges or that the urges caused marked distress or interpersonal difficulty; and (3) that the person . . . is at least 16 years of age, and at least five years older than the child or children in criterion A.," but this criterion does not include "individuals in late adolescence who were involved in an ongoing sexual relationship with a 12 or 13–year–old." In

---

1. The experts presented testimony that Axis I is "reserved for the major psychiatric disorders or major mental disorders that occur. They can occur at any time of life, but they tend to be more severe, just in general, and cause more disruption in a person's life in their ability to get along with others."

Dr. Harry's opinion, Mr. Cannon is an incurable pedophile.

Dr. David B. Clark, a forensic psychologist, testified for Mr. Cannon that although he still may be a child molester, Dr. Clark did not consider him a pedophile. Dr. Clark acknowledged the three diagnostic criteria for pedophilia, but found that Mr. Cannon did not meet the first criterion—that a child be pre-pubescent—because pedophilia is "sexual attraction to children that are not sexually developed," and Mr. Cannon *had reported* to him that S.S. was "fully developed" during the period he raped and sodomized her, although she was younger than 13 years. There is no indication in the record that Dr. Clark attempted to verify this report.

Dr. Clark further testified that the distinction between "child molester" and "pedophile" is important, because "if you have somebody whose exclusive sexual attraction is to young children who are not sexually developed ... you've got big trouble. This is somebody who is going to be a high-risk;" if a person is a child molester, but is not a pedophile, that person has a "more positive prognosis for the future." As Mr. Cannon had made changes in his life, Dr. Clark believed that he has a "very low" risk of re-offense, especially because he no longer suffers from serious psychological disorder and the offense happened "at a time when he was a very disturbed person."

The trial court noted that a modification of the decree to give Mr. Cannon unsupervised visitation or custody is precluded by an August 2005 amendment to section 452.375.3. As amended, the statute states:

> In any court proceeding relating to custody of a child, the court shall not award custody or unsupervised visitation of a child to a parent if such parent or any person residing with such parent has been found guilty of, or pled guilty to, any of the following offenses [which include sections 566.032 and 566.062] *when a child was the victim* ...

Sec. 452.375, RSMo Supp.2006 (emphasis added).

Article I, section 13 of Missouri's Constitution states "[t]hat no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation ... can be enacted." The trial court found that because this amendment was enacted after Mr. Randall's marriage was dissolved, it served "to 'retroactively' take away [his] fundamental right to associate with his own children ... without due process of law." It further concluded that the statute violated the equal protection clauses of the United States and Missouri constitutions as applied to Mr. Cannon because it impinged on his fundamental right "to associate with his own children and maintain a relationship with them." The court awarded Mr. Cannon joint legal and physical custody, although he had not moved for a change in custody.

Ms. Randall appeals directly to this Court challenging the circuit court's finding that section 452.375 is unconstitutional. Mo. Const. art. V, sec. 3.

## II. STANDARD OF REVIEW

■■■■ Construction of a statute is a question of law, which this Court reviews *de novo. Weinschenk v. State,* 203 S.W.3d 201, 210 (Mo. banc 2006). A "statute is presumed to be valid and will not be declared unconstitutional unless it clearly contravenes some constitutional provision." *Doe v. Roman Catholic Diocese of Jefferson City,* 862 S.W.2d 338, 340 (Mo. banc 1993). "This Court 'will resolve all doubt in favor of the act's validity' and 'make every reasonable intendment to sustain the constitutionality of the statute.'" *Reproductive Health Services of Planned Par-*

*enthood of St. Louis Region, Inc., v. Nixon,* 185 S.W.3d 685, 687 (Mo. banc 2006).

### III. SECTION 452.375 AS AMENDED IS NOT RETROSPECTIVE IN ITS OPERATION

Mr. Cannon contends that the amended version of section 452.375 violates the requirement of Missouri's constitution that "no law . . . retrospective in its operation . . . can be enacted." Mo. Const. art. I, sec. 13. Although Mr. Cannon broadly asserts the statute deprives him of his right to associate with his children, a closer look at his allegations in regard to the retrospective laws provision shows it is uncontested that nothing about the amendments to section 452.375 actually changed anything about Mr. Cannon's relationship with his children. Prior to the amendments, he had supervised visitation; after the amendments, he had supervised visitation. He still is permitted supervised visitation.

Mr. Cannon's real argument is not that the new law actually deprives him of any existing privilege of unsupervised visitation or custody. Rather, he complains that the amendments remove his ability *to seek or obtain* unsupervised visitation or custody based on his past conviction. In effect, then, he is arguing that he had a vested right to seek increased visitation rights (although he avoids using the term "vested") and that the amendment interfered with that right.

 As this Court noted in *Jerry–Russell Bliss v. Hazardous Waste,* 702 S.W.2d 77, 81 (Mo. banc 1985), under Missouri's Constitution a new law may not "impair vested rights acquired under existing laws, or create new obligation, impose a new duty, or attach a new disability in respect to transactions already past." *Accord, M & P Enterprises, Inc. v. Transamerica Financial Services,* 944 S.W.2d

154, 160 (Mo. banc 1997). But "a statute is not retrospective . . . because it [merely] relates to prior facts or transactions but does not change their legal effect, or because some of the requisites for its action are drawn from a time antecedent to its passage, or because it fixes the status of a person for the purpose of its operation." *Jerry–Russell Bliss,* 702 S.W.2d at 81.

*Doe I v. Phillips,* 194 S.W.3d 833 (Mo. banc 2006), applied these principles in holding that the legislature did not run afoul of the bar on retrospective laws in imposing additional collateral consequences to the Does' prior guilty pleas, noting that "[n]othing in the Does' releases from supervision states that no further collateral consequences will be imposed . . . a vested right 'must be based on something more than a mere expectation based upon an anticipated continuance of existing laws.'" *Id.* at 852. Where no vested right is at issue, a law must impose an additional obligation based solely on past actions to violate the constitutional prohibition on retrospective operation of laws. *Id.* at 850–51 (requirement that the Does register was improper as imposing additional obligation solely based on past offenses, while other collateral consequences, not requiring additional obligation or affecting vested rights, were not).

*La–Z–Boy Chair Co. v. Director of Economic Development,* 983 S.W.2d 523, 525 (Mo. banc 1999), applied these principles to deny a taxpayer's claim "that it ha[d] a vested right to a ten-year exemption for one-half of its Missouri taxable income from the entire plant under the 1991 version of section 135.220, and therefore, the 1992 amendment cannot be applied retrospectively to limit the exemption to one-half of the Missouri taxable income from the 'new business facility.'" *Id.* at 525. This Court held that a right is not "vested" if it is based on "a mere expectation based

upon an anticipated continuance of the existing law," because no one has a vested right that the law will remain unchanged. *Id.*

*Hoskins v. Box,* 54 S.W.3d 736 (Mo.App. 2001), applied these principles to a case similar to this one. In 1993, father pleaded guilty to felony child abuse for crimes against his youngest son and was placed on five years probation with the condition that he have no contact with any of his children during his probation. He and his wife dissolved their marriage in 1994, and, consistent with his probation conditions, he had no visitation or custody. A year after his release from probation in 1998, he sought to modify his decree to allow unsupervised visitation.[2] The court held that the trial court had properly denied such visitation under section 452.400, RSMo, which had been amended in 1998 to prohibit the award of unsupervised visitation or custody to one accused of a felony child abuse and other sex crimes involving children as victims.

*Hoskins* rejected father's argument, noting that he could have sought a change in the decree to allow visitation between the time his probation ended and the time the 1998 amendment barring unsupervised visitation was adopted, but he failed to do so. In any event, it found, a motion to modify is an independent proceeding. At the time the motion to modify was filed, the amended statute was in effect and precluded unsupervised visitation. Unsupervised visitation was denied not based on a retrospective application of the laws, because, "in dismissing Father's motion to modify, the trial court was not applying the statute retroactively. Rather, it was applying the law in effect at the time the action was commenced." *Id.* at 740. *Hoskins* further concluded that prior to filing his motion to

modify, "the best that can be said is that Father had a 'mere expectation' that he could seek visitation. And a 'mere expectation' is not a vested right." *Id.* at 741.

█ The reasoning of these cases is applicable here. Prior to enactment of the 2005 amendment, Mr. Cannon had been granted the right to supervised visitation. The amended law did not purport to affect that prior right. The amended law, in effect at the time he sought modification, did prohibit him from obtaining unsupervised custody or visitation. This is a change from the law in effect at the time of his dissolution. But nothing in Missouri's constitution or statutes states that one has a right to expect the law to remain static so that the law in place at the time of one's dissolution—or for that matter, at the time of one's marriage, or engagement, or coming of age—will remain inviolate.

Mr. Cannon seeks a change in his status from having supervised to unsupervised visitation. The statute in effect at the time he sought this change did not permit that change in his visitation rights. The fact that he had not anticipated that a law would be enacted that would preclude him from seeking a change in the nature of his visitation does not make that amended law unconstitutionally retrospective in operation as to him, for "a mere expectation based upon anticipated continuance of the existing law" does not constitute a vested right. *La–Z–Boy,* 983 S.W.2d at 525.

## IV. SUPERVISED VISITATION PROVIDES A REASONABLE BALANCE OF THE BEST INTERESTS OF THE CHILD AND OF A PARENT'S RIGHT TO ASSOCIATE WITH HIS OR HER CHILDREN

Mr. Cannon further contends that the amended version of section 452.375 uncon-

---

2. Although it is not clear from the opinion, the father in *Hoskins* must have sought unsu-

pervised visitation, as the statute permits supervised visitation.

stitutionally deprives him of his fundamental right to associate with his children and violates his equal protection and due process rights.

The United States Supreme Court has recognized that a "natural parent's 'desire for and right to the companionship, care, custody, and management of his or her children is an interest far more precious than any property right.'" *Santosky v. Kramer*, 455 U.S. 745, 758–759, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). It is an interest that "undeniably warrants deference and, absent a powerful countervailing interest, protection." *Lassiter v. Department of Social Servs. of Durham Cty.*, 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). The state has a countervailing "right—indeed, duty—to protect minor children through a judicial determination of their interests," *Stanley v. Illinois*, 405 U.S. 645, 649, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), in a neglect proceeding or in a dissolution action. *Id.; Blakely v. Blakely*, 83 S.W.3d 537 (Mo. banc 2002). In balancing such competing interests, the courts look at the private interests that will be affected, the risks of erroneous deprivation of the affected interests, and the government's administrative and fiscal burden. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

These two interests are most directly in opposition in cases involving the termination of parental rights. In such cases, the parents risk permanent termination of their interests in the child. Against this interest must be balanced the state's "*parens patriae* interest in preserving and promoting the welfare of the child and a fiscal and administrative interest in reducing the cost and burden of such proceedings." *Santosky*, 455 U.S. at 766, 102 S.Ct. 1388. The Supreme Court has held that because of the "final and irrevocable" nature of a rights termination, the state must present clear and convincing evidence that termination is in the child's best interests. *Santosky*, 455 U.S. at 769–770, 102 S.Ct. 1388. *See also M.L.B. v. S.L.J.*, 519 U.S. 102, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996). By contrast, where the interest involved is determination of paternity, proof by a preponderance of the evidence will suffice. *Rivera v. Minnich*, 483 U.S. 574, 107 S.Ct. 3001, 97 L.Ed.2d 473 (1987).

The Supreme Court has not clarified the appropriate standard to apply when considering custody and visitation issues except in the context of grandparent visitation, when the Court stated, in a situation involving a mother seeking to deny visitation to the deceased father's parents, that while a parent's interest in his or her children is entitled to "heightened protection," it is not entitled to "strict scrutiny." *Troxel v. Granville*, 530 U.S. 57, 80, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Most states, like Missouri, provide that in a dissolution proceeding, a court may limit a parent to supervised visitation if it finds that unsupervised visitation "would endanger the child's physical health or impair his emotional development." *Sec.* 452.400.2. Where a court finds that a parent has sexually abused the child, limitation of the parent to supervised visits long has been recognized as a proper balancing of the interests of the parent and the child. *See, e.g., L.J.B. v. L.W.B.*, 921 S.W.2d 23, 26–27 (Mo.App.1996).

This is why the dissolution court initially ordered that Mr. Cannon be limited to supervised visitation with his children. Mr. Cannon is attempting to modify the already existing order finding him to be fit for only supervised visitation. The cases he cites dealing with a statute that purports to terminate parental rights or entirely prohibit visitation of parents not found to be unfit are not on point.

Even more basically, Mr. Cannon gives scant credence to the fact that the statutory provision that he attacks as unconstitutional does *not* permit a court to deny him custody or unsupervised visits permanently simply based on a prior finding by the dissolution court that he was unfit or that he sexually abused his child. While section 452.375 concerns decisions regarding custody and visitation in the context of a dissolution proceeding, its prohibition on unsupervised visitation and custody is triggered only where the parent "has been found guilty of, or plead guilty to, a felony violation of chapter 566, RSMo, when the child was the victim." *Id.* It is only when, as here, the parent has been proved beyond a reasonable doubt to have committed a felony involving sexual abuse of a child that the statute's presumption of continued unfitness and its resultant limitations on visitation and custody come into play. Even then, those limitations are not absolute. Mr. Cannon is permitted supervised visitation with his children during their minority—and, of course, once they reach the age of majority, the limitations put in place to protect the children's best interests no longer will be relevant.

The Court finds that this constitutes a reasonable balance between Mr. Cannon's interest in a relationship with his children and the state's *parens patriae* interest in protecting the children from abuse and acting in their best interests. This case provides a good example of why that is so. Mr. Cannon presented evidence from his own expert that it was likely he could interact safely with the children without abusing them. His expert stated he believed Mr. Cannon was a child molester and that no one ever is cured of that disorder. He further testified that Mr. Cannon meets two prongs of the definition of a pedophile because he had acted on his sexual urges with the 12–year old victim and he was at least five years older than the victim, who was under age 16—she was 12 and he was 24. But the expert said that he did not know how fully developed the 12–year–old was at the time of the attack; it had not been proved, therefore, that Mr. Cannon meets the third criteria for a pedophile—in effect giving Mr. Cannon the benefit of the doubt.

The expert called by Ms. Randall stated that Mr. Cannon met the definition of a pedophile and that he exhibited erratic and unpredictable behavior. The person supervising the visits said that Mr. Cannon did not act inappropriately during his supervised visits and that the children were developing a relationship with him. The trial court decided to grant unsupervised visitation and custody to Mr. Cannon.

Were the issue whether to grant unsupervised visitation to a father found by a preponderance of the evidence in a dissolution proceeding to have committed sexual misconduct, a more difficult question would be presented. But, here, Mr. Cannon was convicted by proof beyond a reasonable doubt of rape and sodomy of his 12–year–old stepchild living in his home. The legislature has made the determination that it presents too great a risk to minor children to allow them to have unsupervised visits with a person convicted of such a crime. The Court does not have before it a claim that Mr. Cannon was convicted unfairly or that he is innocent. He admits his conduct. He presents the very type of risk that the legislature found too great.

The Supreme Court of Louisiana considered a similar issue in *In the Interest of A.C.*, 643 So.2d 719 (La.1994). The Louisiana statute, LSA–R.S. 9:364(D), prohibited all visitation between a child and a sexually molesting parent until a hearing was held, at which time the various parties could present evidence that the offending parent

successfully has completed a sex offender program and that supervised visitation is in the child's best interests. Only then may even *supervised* visitation of the victim be allowed. *A.C.* found that such a temporary suspension of parental rights was not entitled to heightened scrutiny and that, because the parent could reestablish a relationship through supervised visitation, there was no violation of the fundamental right to associate with the parent's children, stating:

> The legislature has made a determination that the need to protect the child from the often deleterious effects of contact with the abusive parent outweighs the limited loss of rights that the parent will experience. This is reflected in the legislature's "societal judgment" as to where the risk of error should fall ...

*Id.* at 727.

Similarly, here, the application of section 452.375.3 to Mr. Cannon is not a violation of due process and does not limit his right to associate with his children unfairly. The state is not preventing Mr. Cannon from having a relationship with his children and is not attempting to deprive him of his fundamental right to associate with them. The amended version of section 452.375 still allows him to have visitation, but it limits his interaction with his children to a supervised environment. This limitation is based on the undisputed fact that Mr. Cannon was convicted of raping and sodomizing a child. The limitation is reasonable and not an infringement of his fundamental rights to associate with his children.[3]

Mr. Cannon's additional argument that it violates equal protection that he can be denied custody and unsupervised visitation while a murderer or molester who was still married would not be denied such visitation is not well-taken. First, such conduct could well provide the basis for a court taking jurisdiction of a child if the other parent permitted unsupervised visits of the child with a convicted child-molester or child-murderer.[4] Second, the dissolution of a marriage itself makes the child an object of conflict and can give the court an authority to act that it otherwise would not have. "[C]hild custody suits deny the concept of a united parental objective and compel us to spare the sword of Solomon, 1 Kings 3:23–27, and determine as clearly as we can what 'the best interests of the child' require." *Waites v. Waites,* 567 S.W.2d 326, 331 (Mo. banc 1978); *see also In re Marriage of Kohring,* 999 S.W.2d 228 (Mo. banc 1999) (rejecting claim that it violated equal protection clause and parent's fundamental right to decide whether to support child to require divorced father to pay for college expenses). Unquestionably, the state has a right to protect children, whether by limiting visitation or even by terminating parental rights if the health, welfare and safety of the children so requires. *See Sable Comm. of California, Inc. v. F.C.C.,* 492 U.S. 115, 128, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989) (recognizing government has compelling interest in protecting children); *see e.g., In re P.L.O.,* 131 S.W.3d 782 (Mo. banc 2004) (termination of parental rights was in the children's best interest).

---

**3.** Because this Court has determined that section 452.375 is constitutional and precludes Mr. Cannon from obtaining unsupervised visitation or custody of his children, this Court need not reach Ms. Randall's other arguments why the trial court erred in giving Mr. Cannon joint legal and physical custody of his children.

**4.** *See, e.g. In re Adoption of B.D.W.,* 185 S.W.3d 727 (Mo.App.2006) (mother's failure to keep abusive father away from the children was reason to place children in foster care).

## V. CONCLUSION

In this case, section 452.375 does not violate Missouri's constitutional prohibition against laws retrospective in operation because it does not impair a vested right or create a new obligation, impose a new duty, or attach a new disability to past transactions. The statute also does not infringe Mr. Cannon's fundamental right to associate with his children; he still can maintain a relationship with his children, but it is limited to supervised visitation, the same type of limit on visitation that has been in place since his marriage's dissolution. Mr. Cannon is not entitled to custody or unsupervised visitation with his children under section 452.375.3. That provision is not unconstitutional. Accordingly, the judgment of the trial court is reversed, and the case is remanded.

All concur.