F.R., Appellant,

v.

ST. CHARLES COUNTY SHERIFF'S DEPARTMENT, Respondent.

State of Missouri, Appellant,

v.

Charles A. Raynor, Respondent.

Nos. SC 89834, SC 90164.

Supreme Court of Missouri, En Banc.

Jan. 12, 2010.

Michael A. Gross, St. Louis, MO, for Appellant F.R., in No. 89834.

Robert E. Hoeynck, Jr., Office of St. Charles County Counselor, St. Charles, MO, for Respondent St. Charles County Sheriff's Department, in No. 89834.

Chris Koster, Attorney General, Ryan Bertels, Assistant Attorney General, for Amicus Curiae in No. 89834.

Jacob W. Shellabarger, Regina Faulkenberry, Jason H. Lamb, Audrain County Prosecuting Attorneys Office, Mexico, MO, for Appellant State of Missouri, in No. 90164.

Ellen H. Flotman, Office of the Public Defender, Columbia, MO, for Respondent Charles A. Raynor, in No. 90164.

Anthony E. Rothert, A.C.L.U. of Eastern Missouri, St. Louis, MO, David C. Nelson, Nelson and Nelson, Belleville, IL, for Amicus Curiae, in No. 90164.

MICHAEL A. WOLFF, Judge.

In the first of these cases, F.R., a convicted sex offender, challenges the constitutional validity of section 566.147[1], Missouri's "School Residency Law," which prohibits convicted sex offenders from residing within 1,000 feet of any school or child-care facility. Because F.R. was convicted and sentenced before the "school residency law" was enacted, section 566.147, as applied to F.R., is unconstitutionally retrospective in its operation.

The circuit court entered judgment against F.R. The judgment is reversed.

In the second case, Charles Raynor, a convicted sex offender, challenges the constitutional validity of section 589.426, which prohibits convicted sex offenders from going outdoors, turning on their outdoor lights and handing out candy on Halloween, and which requires them to post a sign stating "no candy or treats at this residence." Because Raynor was convicted and sentenced before section 589.426 was enacted, section 589.426, as applied to Raynor, is unconstitutionally retrospective in its operation.

The circuit court entered judgment for Raynor. The judgment is affirmed.

---

1. All statutory references are to RSMo Supp. 2008, unless otherwise indicated:

## Facts and Procedural History of
### *F.R. v. St. Charles County Sheriff's Department*

F.R. pleaded guilty to five sex offenses in 1999 and was sentenced to a prison term of seven and a half years. His sentence imposed certain obligations on him: he was required to complete a sex offender treatment program successfully before his release;[2] he was required to register as a sex offender within 10 days of his entry into any county;[3] and he was required to comply with certain fingerprinting and reporting requirements imposed on registered sex offenders.[4] He was paroled in February 2004 and has complied with the statutory requirements imposed on him as a sex offender from the time of his release from custody through the time this case was submitted to the circuit court.

Missouri's legislature enacted a statute, effective in August 2004, prohibiting sex offenders from residing within 1,000 feet of schools or child-care facilities. Section 566.147, RSMo Supp.2004.[5] In June 2008, F.R. sought to move to the home of his fiancée in O'Fallon, Missouri. He notified the St. Charles County sheriff's department of his intent to reside there and was advised that its location satisfied the requirements of section 566.147. When he moved in, a flier was distributed with

---

2. Sections 566.141, 589.040.2, RSMo Supp. 1990.

3. Sections 589.400, RSMo Supp.1998.

4. Sections 589.407, RSMo Supp.1998.

5. Section 566.147 was amended in 2006 and 2008, but the amendments do not materially impact its application to this case. The statute provides:

1. Any person who, since July 1, 1979, has been or hereafter has pleaded guilty or nolo contendere to, or been convicted of, or been found guilty of:

(1) Violating any of the provisions of this chapter or the provisions of subsection 2 of section 568.020, RSMo, incest; section 568.045, RSMo, endangering the welfare of a child in the first degree; subsection 2 of section 568.080, RSMo, use of a child in a sexual performance; section 568.090, RSMo, promoting a sexual performance by a child; section 573.023, RSMo, sexual exploitation of a minor; section 573.025, RSMo, promoting child pornography in the first degree; section 573.035, RSMo, promoting child pornography in the second degree; section 573.037, RSMo, possession of child pornography, or section 573.040, RSMo, furnishing pornographic material to minors; or

(2) Any offense in any other state or foreign country, or under federal, tribal, or military jurisdiction which, if committed in this state, would be a violation listed in this section;

shall not reside within one thousand feet of any public school as defined in section 160.011, RSMo, or any private school giving instruction in a grade or grades not higher than the twelfth grade, or child-care facility as defined in section 210.201, RSMo, which is in existence at the time the individual begins to reside at the location.

2. If such person has already established a residence and a public school, a private school, or child-care facility is subsequently built or placed within one thousand feet of such person's residence, then such person shall, within one week of the opening of such public school, private school, or child-care facility, notify the county sheriff where such public school, private school, or child-care facility is located that he or she is now residing within one thousand feet of such public school, private school, or child-care facility and shall provide verifiable proof to the sheriff that he or she resided there prior to the opening of such public school, private school, or child-care facility.

3. For purposes of this section, "resides" means sleeps in a residence, which may include more than one location and may be mobile or transitory.

4. Violation of the provisions of subsection 1 of this section is a class D felony except that the second or any subsequent violation is a class B felony. Violation of the provisions of subsection 2 of this section is a class A misdemeanor except that the second or subsequent violation is a class D felony.

F.R.'s photograph, address and criminal record stating "look who's moved into your neighborhood." Two days after F.R. moved in, the sheriff measured the distance between the home and a nearby child-care facility. Measuring from property line to property line—rather than building-to-building—the sheriff determined the home was only 913.34 feet from the child-care facility. The sheriff informed F.R. that he must move from the home. F.R. relocated to a motel.[6]

F.R. filed suit, seeking declaratory and injunctive relief from the sheriff's determination that he could not reside at the O'Fallon home. He argued that section 566.147 was unconstitutionally retrospective in its application, an *ex post facto* law and impermissibly vague. He also claimed that the statute did not apply to him because his residence wrongly was determined to be within 1,000 feet of the child-care facility. The trial court rejected F.R.'s claims.

### Facts and Procedural History of *Raynor v. State*

Charles Raynor is a registered sex offender in Audrain County pursuant to section 589.400(7) and 42 U.S.C. section 16913 due to a 1990 conviction in the state of Washington for indecent liberties with a child younger than 14 years old. Missouri's legislature enacted section 589.426,[7] effective in August 2008, imposing certain restrictions on registered sex offenders' conduct on Halloween night. On Halloween, October 31, 2008, Mexico public safety officers checked registered sex offenders' residences for compliance with section 589.426. When an officer arrived at Raynor's registered address, the officer observed a woman passing out candy to children. She informed the officer that Raynor was inside the house, but that they both believed he was in compliance with the statute because he was not handing out candy. No sign was posted at the residence stating "No candy or treats at this address." Raynor was charged with a class A misdemeanor for failure to comply with section 589.426.

Raynor moved to dismiss the charges against him as being unconstitutionally retrospective in violation of article I, section 13 of the Missouri Constitution. The circuit court sustained his motion to dismiss and held that the statute unconstitutionally created new obligations on Raynor with respect to his past actions. The state appeals.

### Standard of Review

This Court has exclusive jurisdiction over these appeals pursuant to Missouri Constitution article V, section 3, as

---

**6.** After the sheriff told F.R. he must move, F.R. obtained a measurement from a private surveying company that determined that the corners of the residence and the child-care facility were 1,077.9 feet apart and that the entryways were 1,096.6 feet apart.

**7.** Section 589.426 provides:

1. Any person required to register as a sexual offender under sections 589.400 to 589.425 shall be required on October thirty-first of each year to:
(1) Avoid all Halloween-related contact with children;

(2) Remain inside his or her residence between the hours of 5 p.m. and 10:30 p.m. unless required to be elsewhere for just cause, including but not limited to employment or medical emergencies;
(3) Post a sign at his or her residence stating, "No candy or treats at this residence"; and
(4) Leave all outside residential lighting off during the evening hours after 5 p.m.
2. Any person required to register as a sexual offender under sections 589.400 to 589.425 who violates the provisions of subsection 1 of this section shall be guilty of a class A misdemeanor.

the cases require determination of the validity of a state statute. Constitutional challenges to a statute are reviewed *de novo*. *Franklin County ex rel. Parks v. Franklin County Comm'n*, 269 S.W.3d 26, 29 (Mo. banc 2008). A statute is presumed valid and will not be held unconstitutional unless it clearly contravenes a constitutional provision. *Id.* The person challenging the statute's validity bears the burden of proving the act clearly and undoubtedly violates the constitution. *Id.* In these cases, F.R. and Raynor do not challenge the validity of the statutes as applied to sex offenders convicted after the law's effective date, but challenge the law's application as to them, whose convictions occurred before the law's effective date.

## Analysis

■ Article I, section 13 of the constitution forbids enactment of a law that is "retrospective in its operation." [8] The prohibition against a law retrospective in its operation has been a part of the Missouri constitution from its 1820 beginning. For the most recent 100 years, this Court consistently has held that a retrospective law "is one which creates a new obligation, imposes a new duty, or attaches a new disability with respect to transactions or considerations already past." *Squaw Creek Drainage Dist. v. Turney*, 235 Mo. 80, 138 S.W. 12, 16 (1911). *Turney* is cited and followed in recent cases that involve new obligations, duties or disabilities on those whose convictions for sex offenses are already past. *See, e.g., Doe v. Phillips*, 194 S.W.3d 833 (Mo. banc 2006), and *R.L. v. Missouri Dep't of Corrections*, 245 S.W.3d 236 (Mo. banc 2008). The principle applies to laws enacted after a plea or conviction. *State v. Holden*, 278 S.W.3d 674 (Mo. banc 2009).

■ Analyzing the question of whether a law is retrospective best can be done by dealing with the particular facts of a case rather than attempting broad pronouncements. These two cases are simple cases that can be resolved by applying article I, section 13 in the same way as it was applied in *Doe v. Phillips* and *R.L.*. The 2004 law's residency restriction and the 2008 law's Halloween requirements—enacted years after F.R.'s and Raynor's convictions—are laws that operate retrospectively as applied to them.[9]

■ The question is whether section 566.147 or 589.426, enacted after F.R.'s and Raynor's convictions, impose new obligations, duties or disabilities. The constitutional principle of article I, section 13 bars enactment of laws that impose a new obligation, duty or disability on matters already legally and finally settled.

When F.R. was convicted in 1999, there was no law forbidding him from living within 1,000 feet of a school or day-care center. That law, section 566.147, was enacted in 2004 and amended in 2006. Its command that a person who has been convicted of a sex offense cannot reside within 1,000 feet of a school or day-care center imposes a new obligation, or duty or disability. *Jerry–Russell Bliss, Inc. v. Hazardous Waste Mgmt. Comm'n*, 702 S.W.2d 77, 81 (Mo. banc 1985). Similarly, when Raynor was convicted in 1990, there was no law requiring him to put up a sign and forbidding him from going outdoors, turning on outdoor lights or handing out candy on Halloween. That law, section 589.426,

---

8. Article I, section 13 provides: "That no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be enacted."

9. The Court need not reach the vagueness or *ex post facto* claims.

was enacted in 2008 and imposes a new obligation, or duty or disability.

■ Some of the cases under article I, section 13 refer to "vested rights." The constitutional principle, as invoked here, does not require a showing of a vested right. The constitutional language does not limit its application to vested rights. It may be suggested by the Court's language in *Jerry–Russell Bliss, Inc. v. Hazardous Waste Mgmt. Comm'n*, 702 S.W.2d 77, 81 (Mo. banc 1985): Retrospective or retroactive laws have been defined "as those *which take away or impair vested rights acquired under existing laws*, or create a new obligation, impose a new duty, or attach a new disability in respect to transactions or considerations already past." But the vested rights reference is a disjunctive option, along with a new obligation, or duty or disability. Because of the disjunctive "or," the constitutional principle, as invoked here, under this Court's precedents does not require a showing of a vested right.[10] Because the phrase is disjunctive—"a new obligation . . . a new duty, *or* . . . a new disability"—an analysis need go no further than one of these.[11] An obligation and a duty in most instances mean the same thing. The concept of a "disability" is limited to a disabili-

ty that begins with the pre-Statute conviction. For instance, if a law said everyone previously convicted of X shall pay the school district $500, it would be retrospective. The individual is being penalized in an additional amount for the previous conviction. But if the law said the school board shall not hire as a guidance counselor anyone who previously was convicted of X, it would not be retrospective because the obligation is on the school board. This also is not a disability because the regulatory consequence is on the school board. In a sense it is a disability to the convict, but there is no "legal" disability because the law is not requiring him to do anything, for example to pay a fine.

■ By contrast, a subsequent law that requires a sex offender to do something—with a criminal penalty for not doing what the new law requires—is the imposition of a new obligation or duty imposed solely as a result of the pre-Statute conviction.[12] For instance, in *Doe v. Phillips*, 194 S.W.3d 833, there was no challenge to the state keeping a list of sex offenders following their convictions, regardless of when those convictions occurred. What article I, section 13 prohibits is the imposition of a new duty or obligation—the duty of the sex offender to

---

10. Similarly, the analysis of the issue under the equal protection and due process clauses of the 14th Amendment to the United States Constitution, in *Doe v. Miller*, 405 F.3d 700, 714 (8th Cir.2005), is irrelevant to an analysis of article I, section 13 of the Missouri Constitution. The Eighth Circuit's observation in *Doe v. Miller* that the right to live where one chooses "has not been elevated to the status of 'fundamental right' " has no bearing on the question of whether the school residency restriction in section 566.147 is retrospective in its operation.

11. The dissent argues that this opinion places too much weight on the question of obligation, duty and disability and ignores the vested rights analysis and legislative intent.

It argues that the *Jerry–Russell Bliss* test is created judicially and, therefore, the Court is ignoring constitutional mandates. Yet a reference to vested rights also does not appear in the constitution. Further, the merits of the *Jerry–Russell Bliss* test are not being contested in this case. As it has been applied in the Missouri courts for almost 100 years, beginning with *Squaw Creek Drainage District v. Turney*, 138 S.W. at 16, it is entitled to judicial deference.

12. This is not to suggest that a criminal penalty is necessary to show a violation of article I section 13; imposition of a civil obligation also would violate the constitutional provision. *Phillips*, 194 S.W.3d 833.

take the affirmative step of registering himself. In other words, article I, section 13 does not prohibit the state from keeping a registry of sex offenders, but a new law cannot require a previously convicted sex offender to put himself on the list.

The obligation or duty imposed on F.R. is that—before moving to a new residence—F.R. has to find out whether the residence is within 1,000 feet of a school or day-care facility. If, as it turns out, the new residence is within 1,000 feet of such a facility, he must move. There is in this case an obligation or a duty imposed years after F.R.'s conviction that he must perform or else he will be subject to a new criminal penalty under section 566.147.4.

F.R. attempted to perform his new personal obligation or duty before moving to his fiancée's home. He notified the St. Charles County sheriff's department and received word that he could reside there without offending the statute—before he moved in to his fiancée's O'Fallon home in June 2008. When the sheriff's office notified him that the measurement from the home to a day-care facility was actually 913 feet between the property boundaries, and he could not reside there without violating the statute, F.R. was required to change his place of residence. F.R. was unable to live in his fiancée's home based solely on his past criminal act.

■ A new criminal law operates retrospectively if it changes the legal effect of a past conviction. *See Jerry–Russell Bliss,* 702 S.W.2d at 81. The retrospective nature of section 566.147 is readily apparent if one considers an essential element of a felony charge against F.R. once he moved into his fiancée's residence. The essential element, as applied to F.R., is the conviction that pre-dates the school residency law. The existence of this one fact imposes the obligation. Unquestionably, the new law gives a legal effect to the prior conviction—it would be used to convict F.R. of a new crime. In fact, the prior conviction is the *sole* basis for the restriction that would result in a criminal charge.

In Raynor's case, section 589.426 imposes four obligations or duties on a sex offender on Halloween night: (1) avoid contact with children; (2) remain inside his residence; (3) post a sign on his door; and (4) leave his light off. These are obligations or duties imposed years after Raynor's conviction that he must perform or else he will be subject to a new criminal penalty under section 589.426.

The essential element of a misdemeanor charge against Raynor pursuant to section 589.426, is that he is "a person required to register as a sexual offender...." Raynor would not be required to register as a sex offender unless he was convicted of a sexual offense. Raynor's 1990 sex offense conviction predates the 2008 Halloween law. Therefore, just as in F.R.'s case, the new law gives a legal effect to the prior conviction—it would be used to convict Raynor of a new crime. Again, the *sole* reason for these requirements is Raynor's prior sex offense conviction.

The challenged statutes simply impose new obligations or duties on F.R. and Raynor, giving new legal effect to their prior convictions. What may be difficult, however, is to distinguish the retroactive effect of this law from the ordinary regulatory actions that may take into account past conduct or past conditions in providing current or prospective regulation. This slippery slope was recognized in the *Squaw Creek Drainage District v. Turney* decision nearly 100 years ago. There, a landowner objected to inclusion of his land in a drainage district, under a statute recently enacted; the drainage district had been established years before without inclusion of his land. "[T]he only ground

upon which a retrospective application of this statute is asserted is that it applies to an object already in existence at the time of its enactment," the Court said. "Were this a good objection, it would lead to startling results, for it could be as well claimed that no statute could be enacted imposing new duties upon or giving new privileges or rights to a person already born . . . [or] to a corporation already created." *Turney,* 138 S.W. at 16. The Court rejected the contention that a court decree creating the drainage district, excluding the land in question, could not be altered by subsequent legislation because the nature of the decree was "tentative" or "experimental" and the judicial decree was not intended to fix forever the boundaries of the district. *Id.* at 17.

Similarly, in *Jerry–Russell Bliss,* 702 S.W.2d at 81, this Court approved consideration of prior waste management practices in denying an applicant a license to transport hazardous waste. "A statute is not retrospective or retroactive," this Court said, "because it relates to prior facts or transactions but does not change their legal effect, or because some of the requisites for its action are drawn from a time antecedent to its passage, or because it fixes the status of an entity for the purpose of its operation." *Id.*

Unlike the hazardous waste regulatory law in *Jerry–Russell Bliss,* the residency law here is the sole reason for the new duty, obligation or disability; it does "change [the] legal effect" of F.R.'s earlier convictions. The prior convictions now mean that F.R. no longer may live within 1,000 feet of a school or day-care facility. It also means he must perform a duty— ensuring the distance of a proposed residence from a school or day-care center before moving to the residence—or, as in

this case, moving if it turns out that the new residence is within 1,000 feet of a school or day-care facility.[13] Failure to perform this new duty and observe this new obligation carries with it the prospect of new criminal liability.

Similarly, the Halloween law does "change [the] legal effect" of Raynor's earlier conviction: he is now required to ensure that he meets the four obligations or duties imposed by the statute despite that, at the time of his 1990 conviction, no such obligation existed. His 1990 conviction is the sole basis for his duty or obligation. If he fails to meet his duty or obligation under the statute, he faces new criminal liability.

This Court recently re-emphasized the distinction between laws, such as those at issue in this case that look to past conduct, and regulatory laws that do not impose new duties or obligations on settled transactions. In that recent case, *State ex rel. Koster v. Olive,* 282 S.W.3d 842 (Mo. banc 2009), the owners of land on which a dam previously had been constructed argued that a statute enacted after the dam was built was unconstitutionally retrospective because it required the landowners to obtain permits. This Court, however, said the law was not retrospective. "The past construction of the dam is not the issue," the Court said. "The dam's present use and its present ability to hold back substantial amounts of water is the issue. The duty imposed to obtain a registration permit is based on the current existence, operation and safety of the dam and is distinguishable from the application of the registration requirements in *Phillips* to a single past criminal act." *Olive,* 282 S.W.3d at 848. As the opinion notes, it is not the past action that is the *sole* reason

---

**13.** This Court is not addressing the issue of whether the 1,000 foot measurement is from

property line to property line or building to building in this opinion.

for the requirement; it is the present situation and need for present protection that justifies the requirement even for pre-existing structures. Further, persons can divest themselves of property or decide not to operate dams if they do not want to be subjected to regulations pursuant to the government's police power, but F.R. and Raynor can take no action that would result in them no longer being sex offenders and subject to subsequent laws that result from that classification.

By contrast, as noted, the 2004 law restricting F.R.'s choice of residency and the 2008 law restricting Raynor's actions on Halloween do "change [the] legal effect" of their past convictions, to use the words of the *Jerry–Russell Bliss* opinion. They make F.R. and Raynor take some action, not previously required of them, based on their previous conviction—or face a new criminal charge.

The dissent argues that F.R. and Raynor are continuing dangers to children and that this Court's analysis should be the same as in *Olive*. Yet these cases differ in their application. In *Olive*, the requirements on the dam were enacted because the dam will continue to operate as a dam in the future and must do so safely. In contrast, F.R. and Raynor served their time and are not shown to continue to operate as criminals; rather, each is a person with felony convictions—a past fact that by itself creates the obligation to move, not their present or future dangerousness.[14] Raynor and F.R. received the punishment available at the time of their convictions. They are under the same obligations as all other persons to obey the law; they have additional obligations or disabilities that were imposed upon them at the time of their convictions. The dam, on the other hand, is still a dam and a known source of present and future danger. To continue to exist, the dam must comply with restrictions imposed to ensure safe operation. If the state in the current cases was required to present evidence that F.R. and Raynor are presently pedophiles—evidence of present or future dangerousness—the state legitimately might impose a present or future obligation not to live near a school. There would be no retrospective law violation, even if a past conviction were part of the proof. But here it is the conviction itself, not any evidence of present or future dangerousness, that alone imposes the obligation, creating a direct retrospective additional obligation.

The laws challenged in these cases are similar to the law that this Court in *Doe v. Phillips* held could not be applied to sex offenders who were convicted before the new requirement was enacted. 194 S.W.3d 833. In *Doe* this Court held that Megan's Law's registration requirements were retrospective as applied to persons who were convicted or pleaded guilty to sex offenses prior to the law's effective

---

**14.** While recognizing the dissent's evident concern about recidivism of sex offenders, rather than assuming that the rates are high, one should look at the data. Of the five categories of felony offenders in Missouri's correctional population—drugs, nonviolent felonies, violent felonies, DWI (driving while intoxicated) felonies, and sex and child abuse—sex offenders have the lowest rates of recidivism. Their rate of recidivism after two years is 5.3 percent, while recidivism rates for other categories of offenders are 9.6 percent for violent offenders, 14.9 percent for nonviolent offenders, 11.7 percent for drug offenders, and 11.4 percent for felony DWI offenders. The rate of recidivism includes the likelihood of a convicted sex offender to commit any future crime, not just a sex offense. Missouri Sentencing Advisory Commission, *Recommended Sentencing Biennial Report 2009* at 46, *available at* http://www.mosac.mo.gov/file/2009%20Biennial%20Report.pdf (last accessed Jan. 8, 2010).

date. "[The law] looks solely at [the Doe plaintiffs'] past conduct and uses that conduct not merely as a basis for future decision-making by the state," this Court said. "Rather it specifically requires the Does to fulfill a new obligation and imposes a new duty to register and maintain and update the registration regularly, based solely on their offenses prior to its enactment . . . . [this] violates our constitutional bar on laws retrospective in operation." *Id.* at 852. Failure to register would be a new offense, as is the situation in this case. The principle, as stated, applies to laws enacted after a plea or conviction. *Holden,* 278 S.W.3d 674. *See also R.L.,* 245 S.W.3d 236.

These instant cases are fundamentally indistinguishable from these precedents.

### Conclusion

The new obligations and duties imposed on F.R. and Raynor are solely the result of their past criminal acts, and the failure to perform these new duties and obligations carries a criminal penalty. The obligations and duties, imposed after the fact of their criminal convictions and based solely on those prior convictions, violate F.R.'s and Raynor's rights under article I, section 13.

As applied to F.R., the school residency requirement of section 566.147 is unconstitutional. The judgment of the trial court is reversed.

As applied to Raynor, the Halloween requirements of section 589.426 are unconstitutional. The judgment of the trial court is affirmed.

TEITELMAN, BRECKENRIDGE and STITH, JJ., concur.

RUSSELL, J., dissents in separate opinion filed.

PRICE, C.J., and FISCHER, J., concur in opinion of RUSSELL, J.

MARY R. RUSSELL, Judge, dissenting.

I respectfully dissent. F.R. is a registered sex offender because he committed five sex crimes against a child—forcible rape, incest, forcible sodomy, first-degree statutory rape, and first-degree statutory sodomy. Raynor is also a registered sex offender because he committed a sexual crime against a child.[1] I find nothing unconstitutional about the protections against sex offenders that the General Assembly has enacted pursuant to sections 566.147 and 589.426.[2] I would reject F.R.'s arguments that section 566.147, which aims to limit the proximity of sex offenders to Missouri's schools and daycares, is unconstitutionally retrospective in its application. I would also reject Raynor's contention that his constitutional rights are impacted impermissibly by a statute preventing him from distributing Halloween candy to children. I would affirm the trial court's declaration that section 566.147 is constitutional, and I would reverse the trial court's judgment that section 589.426 is unconstitutional.

The statutes challenged by F.R. and Raynor have been enacted by the legislature specifically to articulate conduct boundaries for child sex offenders that strive to prevent sex offenders from victimizing children. *See J.S. v. Beaird,* 28 S.W.3d 875, 876 (Mo. banc 2000) (articulating that the legislature's restrictions on sex offenders are aimed at protecting children from violence at the hands of sex

---

1. He was convicted in 1988 in the State of Washington for indecent liberties with a child less than 14 years old.

2. All references to sections 566.147 and 589.426 are to RSMo Supp. 2008, unless otherwise indicated.

offenders). The majority focuses its discussion on the impact the challenged statutes have on sex offenders, but this Court should not fail to consider the legislature's perspective when analyzing constitutional issues. While consideration of the legislature's goals is not the end-all determination of constitutional validity, legislative purpose must be accorded due respect, and it is evident in this Court's standards of review that great deference is given to the legislature when reviewing the constitutional validity of statutes. *See, e.g., Cannon v. Cannon*, 280 S.W.3d 79, 83 (Mo. banc 2009) (noting that statutes are not declared unconstitutional unless they clearly contravene some constitutional provision and discussing that courts make "every reasonable intendment" to uphold a statute's constitutional validity). These highly deferential standards respect the balance between legislative and judicial functions and reflect this Court's regard for the legislature's role as a collective representative of community values and a protector of public safety.

The majority does not discuss the State's position that the challenged sex offender statutes are valid exercises of the State's police power and are needed to protect the public's safety and welfare, particularly the safety of children. The State highlights that both statutes aim to eliminate close proximity between children and sex offenders. The residency restrictions provide a 1,000-foot buffer zone between sex offender residences and the schools and daycares that are entrusted with the daily care of thousands of Missouri children; and the Halloween provisions endeavor to prevent children from being lured by candy to sex offenders' residences on Halloween night.

The Eighth Circuit has expressed its respect for the legislature's prerogative to exercise its police powers to enact restrictions on sex offenders' residences, discussing that sex offender residency restrictions are a rational policy option for reducing the proximity between dangerous offenders and locations frequented by children.[3] *See Weems v. Little Rock Police Dep't*, 453 F.3d 1010, 1015 (8th Cir.2006), *cert. denied*, 550 U.S. 917, 127 S.Ct. 2128, 167 L.Ed.2d 862 (2007), (upholding Arkansas's sex offender residency restrictions); *Doe v. Miller*, 405 F.3d 700, 715–16 (8th Cir. 2005), *cert. denied*, 546 U.S. 1034, 126 S.Ct. 757, 163 L.Ed.2d 574 (2005) (upholding Iowa's sex offender residency restrictions). The Eighth Circuit in *Miller* warned courts to "proceed with restraint" in "extending constitutional protection to an asserted right or liberty interest" in a constitutional challenge, so as to avoid placing a "matter outside the arena of public debate and legislative action." 405 F.3d at 713–14 (internal references omitted). It noted "the authority of a state legislature to make judgments about the best means to protect the health and welfare of its citizens in an area where precise statistical data is unavailable and human behavior is necessarily unpredictable." *Id.* at 714.

Keeping in mind this Court's standards of review that favor findings of constitutional validity, I would follow the Eighth Circuit's lead and uphold sex offender residency restrictions. I believe sections 566.147 and 589.426 are valid and constitutional exercises of the State's power to

---

**3.** While the future dangerousness of F.R. and Raynor is not at issue in the instant cases, the dangerousness of sexual offenders is acknowledged widely, particularly because of concerns about sex offender recidivism. *See, e.g.,* *Doe v. Phillips*, 194 S.W.3d 833, 839–40 (Mo. banc 2006) (noting that a purpose of sex offender registration laws is to "respond to the known danger of recidivism among sex offenders").

protect its youngest, most defenseless citizens.

I do not posit that this Court must uphold sex offender restrictions in complete deference to the legislature's will. But in these cases, I disagree with the majority's conclusions that the challenged statutory provisions are unconstitutionally retrospective. I believe that sections 566.147 and 589.426 are constitutional because they do not impact sex offenders' "vested" or "fundamental rights." And I disagree with the majority's contention that these statutes impose on F.R. or Raynor new duties, obligations, or disabilities that render the statutes unconstitutionally retrospective.

The majority focuses its analysis on *Squaw Creek Drainage District v. Turney*'s definition of a retrospective law as one that creates a new obligation, duty, or disability based on a past transaction. 235 Mo. 80, 138 S.W. 12, 16 (1911). It contends that there is no need to analyze F.R.'s and Raynor's cases in the context of *Jerry–Russell Bliss, Inc. v. Hazardous Waste Management Commission*'s important point that a statute is unconstitutionally retrospective if it impairs *vested rights* acquired under existing laws. *See* 702 S.W.2d 77, 81–82 (Mo. banc 1985). But I believe that *Jerry–Russell Bliss*'s vested rights analysis should be undertaken in determining F.R.'s and Raynor's statutory challenges.

Since 1875, Missouri's retrospective laws prohibition has read:

**Ex post facto laws—impairment of contracts—irrevocable privileges.—** That no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be enacted.

Art. I, sec. 13 (formerly Mo. Const. of 1875, art. II, sec. 15). This constitutional provision has never provided the courts an express definition for "retrospective" or mandated a framework for analyzing challenges brought under this provision.

At Missouri's 1875 Constitutional Convention, Missouri's constitutional delegates debated Missouri's retrospective laws prohibition at length. *See* DEBATES OF THE MISSOURI CONSTITUTIONAL CONVENTION, 1875, vol. II, 369–447. Although a retrospective laws prohibition had been in place since Missouri's 1820 constitution, the 1875 drafters debated whether this prohibition should be enhanced with an express prohibition against ex post facto laws, which were already impermissible under the federal constitution. *See, e.g., id.*, vol. II, 369–75, 382, 391. The ex post facto prohibition was added in 1875 to the general retrospective laws prohibition. *Id.*, vol. IV, 94–95. More important to this case, however, the debaters also discussed, but did *not* add, a proposed amendment to expressly define the term "retrospective" in the constitution. The proposed amendment read:

Nor can any law curative or confirmatory in its operation, or which takes away or impairs any vested right acquired under existing laws, or creates a new obligation, or imposes a new debt, or attaches a new disability in respect to transactions already past.

*Id.*, vol. II, 376.

The author of this amendment noted Missouri's retrospective laws prohibition was not found in the United States Constitution and only appeared in four states' constitutions (Missouri, New Hampshire, Tennessee, and Texas). *Id.* He noted his disbelief that the prohibition on ex post facto laws for criminal matters had not been expanded by more states to prevent passage of retrospective laws relating to civil matters. *Id.*, vol. II, 382–84. He

highlighted that "in no instance ... have the courts given effect to [retrospective legislation relating to civil transactions] so as to disturb vested rights, or the settled rights of property." *Id.*, vol. II, 382. But because the concept was new, he believed definitional language was needed in the constitutional provision to ensure proper construction of the term "retrospective" by Missouri's courts, which he felt had been giving the term different interpretations. *See id.*, vol. II, 376. It was discussed at length that this proposed amendment was a response to a recent court decision relating to a controversial county road bonding issue, and the debaters argued whether the amendment was needed to protect Missourians' land and pocketbooks from improper bonding or taxation requirements. *See id.*, vol. II, 376–447.

When the 1875 debate concerning the retrospective laws prohibition is read in total, it is clear that the chief concern of Missouri's constitutional drafters was whether the legislature would pass a retrospective law that would tread on citizens' financial or property interests. *See id.*, vol. II, 376–447. One convention speaker stated the purpose of prohibiting retrospective legislation as follows: "[W]e endeavor as the representatives of the people to ... limit and curb [legislative powers so] that the people ... are not to go to bed at night in the happy conceit that they owe no debt, and wake up in the morning to learn that the General Assembly of Missouri has imposed on them a debt of five or seven hundred thousand dollars for nothing." *Id.*, vol. II, 393.

Because the definitional amendment was not incorporated at the 1875 convention, the "new duty, obligation, or disability" standard the majority relies on today was a judicial creation of this Court's 1911 *Squaw Creek* opinion, which provided no attribution or citation for this standard.

*See* 138 S.W. at 16. Considering Missouri's retrospective laws prohibition in its historical context, I believe that the majority's opinion makes too much of the "new duty, obligation, or disability" test and is too dismissive of the constitutional drafter's intended analysis of whether a law is unconstitutionally retrospective because it treads on vested rights.

Vested rights are those to which there is "a title, legal or equitable, to the present or future enjoyment of property or to the present or future enjoyment of the demand, or a legal exemption from a demand made by another." *La–Z–Boy Chair Co. v. Dir. of Econ. Dev.*, 983 S.W.2d 523, 525 (Mo. banc 1999) (internal quotations omitted). This Court has recognized that "vested means fixed, accrued, settled or absolute." *Id.* A right is not vested if it is based merely on an expectation that the law will not change, because "no one has a vested right that the law will remain unchanged." *Cannon*, 280 S.W.3d at 84–85 (citing *La–Z–Boy*, 983 S.W.2d at 525, for the proposition that "a right is not 'vested' if it is based on 'a mere expectation based upon an anticipated continuance of the existing law' ").

F.R. complains that section 566.147 impedes on his "vested right to choose where he would live without respect to his status as a convicted person." But it is clear that F.R. had no vested right to believe the law would never change to restrict his residency choices. And F.R. has no vested or property right interest at stake if he cannot reside at his fiancée's residence. *See Miller*, 405 F.3d at 714 (rejecting that there is a "fundamental right" to reside in a place of one's own choosing; upholding Iowa's sex offender residency restrictions because no fundamental right was impacted and the restrictions rationally advanced the legitimate governmental purpose of promoting children's safety).

Like F.R., Raynor also cannot show that the sex offender restrictions he challenges tread on his vested or fundamental rights. He had no vested right to the unrestricted distribution of Halloween candy, and he had no vested right to believe the law would never change to restrict Halloween activities.

The sex offender restrictions challenged by F.R. and Raynor should be upheld because they do not run afoul of Missouri's constitutional framers' intent to protect citizens' vested rights, finances, and property from retrospective legislation.

Further, in addition to my belief that F.R.'s and Raynor's vested and fundamental rights are not impacted by the restrictions in sections 566.147 and 589.426, I also disagree with the majority's holding that these statutes impose on F.R. or Raynor a "new duty, obligation, or disability" that renders the statutes unconstitutionally retrospective.

In *Cannon*, this Court highlighted that *Doe v. Phillips*, 194 S.W.3d 833 (Mo. banc 2006), held that the legislature does "not run afoul of the bar on retrospective laws [by] imposing additional *collateral consequences* to [a defendant's] prior guilty pleas." *Cannon*, 280 S.W.3d at 84 (emphasis added). I would hold that the application of section 566.147's residency restrictions to F.R., which do not impact his pre-existing residence,[4] should be upheld as collateral consequences. I also believe that the Halloween restrictions imposed on

Raynor, which last only five and a half hours on one day a year, should be upheld as collateral consequences.

The majority opines that section 566.147 imposes on F.R. a new obligation or duty to identify the locations of schools and child-care facilities and to determine the distance between his proposed new residence and those locations. But section 566.147 does not impose an obligation on F.R. to independently accomplish distance measurements related to the statute. As a registered sex offender, F.R. has an existing obligation, pursuant to section 589.414.1, RSMo Supp.1998, to notify law enforcement when he moves to a new residence. After F.R. complies with his registry obligations, law enforcement then determines whether F.R.'s new residence is in compliance with the distance regulations of section 566.147. In this case, for example, F.R. was notified by the sheriff that his new residence was too close to the child-care facility property. Nothing in section 566.147 requires F.R. to undertake independent distance measurements. In this case, F.R. chose to obtain his own distance surveys, but he was under no statutory obligation to do so.

The majority notes that this Court recently found there was no retrospective laws violation where owners of a dam were made to obtain post-ownership permits because the duty imposed in obtaining the permits was "based on the current existence, operation and safety of the dam."

4. In *R.L. v. Missouri Department of Corrections*, this Court determined that section 566.147's residency restrictions were unconstitutionally retrospective when used to compel a sex offender to relocate from a residence he had established before the residency restrictions were enacted, as the restrictions wrongly imposed a new obligation on the offender. 245 S.W.3d 236, 237–38 (Mo. banc 2008). After *R.L.*, section 566.147.2 was amended to remove the mandate that offend-

ers relocate from already-established residences. The statute now requires already-established offenders to simply provide notification and proof that their residency predated the location of a school or child-care facility within 1,000 feet of their residence. Unlike the majority, I do not find this Court's decision in *R.L.* instructive to F.R.'s case, because F.R. moved to the residence at issue *after* the 1,000–foot distance prohibition was enacted.

*State ex rel. Koster v. Olive,* 282 S.W.3d 842, 848 (Mo. banc 2009). The majority distinguished *Olive* from this Court's holding in *Phillips* because it was not based on a single past criminal act, but rather "the present situation and need for present protection" that justified the need for the permits. Arguably, though, the restrictions imposed on F.R. and Raynor are similarly not founded solely on their past criminal acts. Instead, the restrictions provide children "present protection" from the "present situation" of sex offenders' residence in their neighborhoods.

Because I believe nothing in the challenged statutes impact sex offenders F.R.'s and Raynor's vested rights, and because the statutes impose on them merely collateral consequences, I do not believe that Missouri's constitutional prohibition on retrospective laws requires the invalidation of sections 566.147 and 589.426. I would uphold these restrictions that the legislature has determined are necessary to protect children from sex offenders.