**Ronald D. CHANDLER, Appellant,**

v.

**Mark ALLEN, Dave Mosby, Linward Appling, and Ronald Molteni, Respondents.**

**No. WD 61061.**

Missouri Court of Appeals, Western District.

June 24, 2003.

Ronald D. Chandler, Jefferson City, pro se.

Jeremiah W. (Jay) Nixon, Atty. Gen., Carolyn G. Vasterling, Jefferson City, for Respondents.

Before JAMES M. SMART, JR., P.J., ROBERT G. ULRICH and RONALD R. HOLLIGER, JJ.

ROBERT G. ULRICH, Judge.

Ronald Chandler appeals the trial court's grant of summary judgment in favor of Mark Allen, Dave Mosby, Linward Appling, and Ronald Moteni (Respondents) on his claims of tortious interference with employment relationship, wrongful termination, and denial of equal protection. Mr. Chandler is a convicted violent sex offender whose job was terminated because of his conviction. The judgment of the trial court is affirmed.

## Facts

Ronald Chandler was an employee of the vendor operating a cafeteria, the Broadway Deli, in the Broadway State Office Building in Jefferson City. The vendor was selected by the Rehabilitation Services for the Blind (RSB) pursuant to the RSB's contract with the Board of Public Buildings, which has general supervision and charge of certain state buildings including the Broadway State Office Building. The Division of Facilities Management is the executive arm of the Board of Public Buildings. Lin Appling is the Director of the Office of Administration Division of Facilities Management; Mark Allen is the Assistant Director of the Office of Administration Division of Facilities Management; Dave Mosby is the Capitol Complex Operations Manager of the Office of Administration Division of Facilities Manage-

ment; and Ronald Molteni is an Assistant Attorney General for the State of Missouri.

Like the Broadway Deli, the Missouri Attorney General's office is a tenant in the Broadway State Office Building. On October 29, 2001, Mr. Molteni communicated to Mr. Allen that the Broadway Deli was employing Mr. Chandler, a registered sex offender, who had an extensive criminal background that included sex offenses involving the use of weapons and coercive force against women who were strangers to him. Thereafter, Mr. Allen made a request by letter to the RSB that Mr. Chandler be removed from service. Mr. Mosby signed the letter on Mr. Allen's behalf. Mr. Allen made such request based on safety concerns resulting from the violent nature of Mr. Chandler's past conduct and his access to the building and its employees and access to various culinary tools in the cafeteria where he worked that could be used as weapons. Thereafter, the vendor terminated Mr. Chandler's employment.

Mr. Chandler sued Respondents claiming interference with his employment relationship, wrongful termination, and denial of equal protection. Respondents filed an answer to Mr. Chandler's petition and a motion for summary judgment. The trial court granted Respondents' motion for summary judgment. It found that (1) Respondents were entitled to summary judgment on the tortious interference with employment relationship claim because Mr. Allen was justified in requesting that Mr. Chandler be removed from service; (2) Respondents were entitled to summary judgment on the wrongful termination claim because Mr. Chandler was neither employed nor terminated from his employment by Respondents; (3) Respondents were entitled to summary judgment on Mr. Chander's claim that Respondents de-

nied him equality under the law because Mr. Chandler failed to allege any similarly situated person treated differently than himself; and (4) Respondents were immune from Mr. Chandler's claims under the official immunity doctrine. This appeal by Mr. Chandler followed.

### Standard of Review

Appellate review of the grant of summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment will be upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 377. The record is reviewed in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record. *Id.* at 376. Facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.*

■ A defending party may establish a right to judgment as a matter of law by showing any one of the following: (1) facts that negate any one of the elements of the claimant's cause of action; (2) the non-movant, after an adequate period of discovery, has not and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. *Id.* at 381.

Once the movant has established a right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genu-

inely disputed. *Id.* The non-moving party may not rely on mere allegations and denials of the pleadings, but must use affidavits, depositions, answers to interrogatories, or admissions on file to demonstrate the existence of a genuine issue for trial. *Id.* The material facts in this case are not in dispute. The issue on this appeal, therefore, is whether Respondents established a right to judgment as a matter of law on Mr. Chandler's claims against them.

### Tortious Interference with Employment Relationship

In the first point addressed on appeal,[1] Mr. Chandler claims that the trial court erred in granting summary judgment in favor of Respondents on his claim of tortious interference with employment relationship. Mr. Chandler argues that Mr. Allen's request that his employment in the Broadway State Office Building be terminated violated section 561.016, RSMo 2000, and his prior conduct was not a basis for the safety concerns of others within the building.

■■■■ To establish a claim for tortious interference with a contract or business relationship, a plaintiff must prove: (1) the existence of a contract or a valid business relationship; (2) defendant's knowledge of the contract or relationship; (3) defendant's intentional interference inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages. *Baldwin Props., Inc. v. Sharp,* 949 S.W.2d 952, 956 (Mo.App. W.D. 1997). In granting summary judgment in favor of Respondents, the trial court focused on the fourth element—absence of justification. A plaintiff has the burden of producing substantial evidence to establish

an absence of justification. *Id.* An absence of justification is the absence of any legal right on the part of the defendant to take the action about which a plaintiff complains. *Taylor v. Zoltek Cos.,* 18 S.W.3d 541, 547 (Mo.App. E.D.2000); *Sharp,* 949 S.W.2d at 956. Typically, the issue of justification arises in situations where a defendant has a legitimate economic interest to protect. *Sharp,* 949 S.W.2d at 956. In such situations, the defendant is justified in interfering with another's business expectancy for the purpose of protecting his own economic interest as long as the defendant does not employ improper means. *Id.* A defendant does not, however, necessarily need to have an economic interest at stake to be justified in interfering with a contract or business expectancy. *Id.* at 957. Justification also exists if a defendant has an unqualified legal right to do the action of which the plaintiff complains. *Taylor,* 18 S.W.3d at 547; *Sharp,* 949 S.W.2d at 957.

Respondents alleged in their motion for summary judgment, and the trial court agreed, that Mr. Allen's request that Mr. Chandler be removed from his job within the Broadway State Office Building was justified by section 8.110, RSMo 2000, and the vending facility contract between the Board of Public Buildings and the RSB. Section 8.110, RSMo 2000, provides in pertinent part that the Director of the Division of Facilities Management "shall exercise all diligence to ensure that all facilities within his management and control . . . are clean, safe and secure." The relevant part of the vending facilities contract provides that all new employees of the vendor selected by the RSB to operate the cafeteria must have security clearance prior to beginning work and that "[t]he Board re-

---

**1.** Mr. Chandler's points on appeal are addressed in a different order than presented in his brief.

serves the right to restrict the vendor's employees to specified areas in the building." The trial court found that, based on the legal right of the Director of the Division of Facilities Management to ensure the safety and security of the buildings under his control and the fact that Mr. Chandler was a registered sex offender who was known to have an extensive criminal background that included sex offenses involving the use of weapons and coercive force against women who were strangers to him, and that Mr. Chandler's position gave him access to the building and its employees and access to various culinary tools in the cafeteria that could be used as weapons, Mr. Allen's request that Mr. Chandler be removed from service was justified.

Mr. Chandler asserts that section 561.016, RSMo 2000, precluded his employment termination because the statute limits the disqualifications and disabilities that may be imposed on him as a convicted felon. Section 561.016 states in pertinent part:

1. No person shall suffer any *legal disqualification or disability* because of a finding of guilt or conviction of a crime or the sentence on his conviction, *unless* the disqualification or disability involves the deprivation of a right or privilege, which is

(1) Necessarily incident to execution of the sentence of the court; or

(2) Provided by the constitution or the code; or

(3) Provided by a statute other than the code, when the conviction is of a crime defined by statute; or

(4) Provided by the judgment, order or regulation of a court, agency or official exercising a jurisdiction conferred by law, or by the statute defining such jurisdiction, when the commission of the crime or the conviction or the sentence is reasonably related to the competency of the individual to exercise the right or privilege of which he is deprived. (emphasis added)

§ 561.016.1, RSMo 2000.

Not all disqualifications or disabilities that historically have resulted from conviction of a criminal felony statute are encompassed by section 561.016. The legislature has not expressed intent within the statute to make a protected class of convicted felons who have concluded the penalty for their miscreant activity. Significant in understanding the purpose of the statute is the included phrase "legal disqualification or disability." The adjective "legal" qualifies the subject of the statute. The legislature intended that only "legal" disqualifications and disabilities be the subject of the statute. The statute expresses the intent of the General Assembly to remove much of the legal stigma resulting from conviction for a felony. Previously, many resulting legal disabilities had no rational relationship to the nature of the conviction. For example, a convict was unable to form a valid contract. *Jandro v. Jandro,* 246 S.W. 609 (Mo.App.1923). A convict serving a life sentence could not execute a valid conveyance of property. *Williams v. Shackleford,* 97 Mo. 322, 11 S.W. 222 (1889). An incarcerated felon could not defend his rights in a civil case because the felon was "civilly dead," *Wamsley v. Snow,* 331 Mo. 261, 53 S.W.2d 258, 259 (1932), although he could be sued civilly, *Gray v. Gray,* 104 Mo.App. 520, 79 S.W. 505 (1904). Prisoners could not file suit for divorce or personal injury. *Thompson v. Bond,* 421 F.Supp. 878, 881 (W.D.Mo.1976). Legal disqualifications or disabilities are those disqualifications and disabilities imposed by law that restrict the legal ability of a convicted person to participate in civil ac-

tivities and to enjoy certain rights ascribed to citizenship. To reduce the several legal disqualifications and disabilities historically imposed on convicted felons and to articulate the identification of those not otherwise articulated and imposed by statute, the General Assembly has provided that convicted felons will not suffer from "legal disqualification or disability" as a result of their convictions, except as provided by state constitution, code, or statute. *Presley v. United States*, 851 F.2d 1052, 1053 (8th Cir.1988); § 561.016. The legislature's grant of social reinstatement of convicted felons is not comprehensive, however. The General Assembly has continued to disqualify convicted felons by statute from enjoying several activities attendant to citizenship within our culture. For example, convicted felons are prohibited from holding public office, § 561.021.1, RSMo 2000, and from voting, § 561.026(1), RSMo 2000, while serving their sentence for the conviction. Upon conclusion of the imposed sentence, these rights are restored. §§ 561.021.2 and 561.026(1), RSMo 2000. The right to serve on a jury is not regained, however, § 561.026(3), RSMo 2000, and neither is the ability to hold office as a sheriff, § 57.010.1, RSMo 2000, nor is the legal ability to be employed as a highway patrol officer, § 43.060.1, RSMo 2000.

The prohibition from imposing legal disqualification or disability as articulated by section 561.016 is limited by the provisions of subparagraphs (1) through (4). These subparagraphs provide that a state constitution provision, code, or statute specifically disqualifying or restricting a convicted felon's participation in civil life is excluded from section 561.016.1. The result of the remaining legal disqualifications and disabilities not eliminated by section 561.016 and other statutes means that the convicted felon is not returned to full enjoyment of citizenship. For example, the court in *United States v. Meeks*, 987 F.2d 575, 578

(9th Cir.1993), *cert. Denied*, 510 U.S. 919, 114 S.Ct. 314, 126 L.Ed.2d 261 (1993), noted, "Missouri has chosen not to vouch for its former felons or to treat them as full members of society, so as to remove their convictions from consideration under federal law."

The General Assembly, therefore, did not intend that section 561.016 eliminate all disqualifications or disabilities resulting from felony conviction. The legislature considered only legal disqualifications and disabilities in section 561.016. Mr. Chandler's attempt to apply the statute to his private employment is misplaced. The statute relates to employment only in "certain regulated areas." Committee Comment to 1973 Proposed Code, 39A V.A.M.S. at 329 (1999). "Regulated areas" include those activities for which a license is required in order to participate. Such a regulated area is the liquor business where a licensing board provides licenses to sell intoxicants to qualified persons or entities. To the extent that licensing of an industry affects employment, section 561.016 was intended to increase the legitimate discretion of licensing boards by eliminating arbitrary or inflexible barriers imposed by criminal conviction. The Committee Comment in anticipation of the statute reflects this attitude:

> The present *law* sometimes contains blanket restrictions against employment in *certain regulated areas* of persons convicted of crimes. Sometimes conviction is relevant to the public safety interests underlying the regulation, but often it is not. By eliminating irrational barriers to employment, we assist offenders in reintegrating themselves into the community. Thus, instead of providing that no liquor license shall be issued to any person "convicted ... of any law applicable to the sale of intoxi-

cating liquor, or who employs in his business ... any person ... who has been convicted of violating such law ...," section 311.060 RSMo, the Code provides a reasonable rule which would authorize *a licensing agency* to refuse to grant a license to an applicant whose criminal record and other circumstances indicate that he would endanger the particular group or industry protected by the agency's licensing power. Many Missouri statutes now leave the matter of licensing to the discretion of the licensing agency, without arbitrary restrictions. E.g., 334.100 RSMo, giving the state board of registration for the healing arts the power to license individuals guilty of "unprofessional or dishonorable conduct," including "conviction of a felony." A prospective physician might have committed a felony followed by a successful period of rehabilitation. "The legislature has wisely given the board the power to decide whether he should be licensed."

**Committee Comment, 39A V.A.M.S. at 329 (1999)(emphasis added).**

Mr. Chandler was terminated from employment in the state office building when Mr. Allen requested that his employment in the building be terminated because of Mr. Chandler's prior conduct evinced by the convictions. Mr. Chandler's employment at Broadway Deli did not involve a regulated business. His discharge did not involve a "legal disqualification or disability" within the meaning of section 516.016. The statute does not apply to Mr. Chandler's situation. Mr. Allen, exercising the discretion granted by section 8.110, RSMo 2000, to ensure the safety and security of the facility, was justified in requesting Mr. Chandler's removal from service. Thus, the trial court did not err in entering summary judgment in favor of Respondents on Mr. Chandler's claim of tortious interference with the employment relationship. Point one is denied.

**Wrongful Termination**

In the next point on appeal, Mr. Chandler claims that the trial court erred in granting summary judgment in favor of Respondents on his wrongful termination claim. The trial court determined that Respondents did not employ Mr. Chandler, and, therefore, he cannot bring a wrongful termination claim against them. Mr. Chandler argues that Respondents controlled the operation of the Broadway Deli and any employee of the deli; therefore, an employer/employee relationship was established.

The determination of whether an employer/employee relationship exists is generally based on "right of control." *Davis v. Human Dev. Corp.*, 705 S.W.2d 540, 542 (Mo.App. E.D.1985)(wrongful termination suit). Right of control is affected by such factors as the "extent of control, actual exercise of control, duration of employment, right to discharge, method of payment for services, furnishing of equipment, whether the work is part of regular business of the employer, and the contract of employment, none of which is in itself controlling, but each may be considered relevant to the issue." *Id.* (*quoting Howard v. Winebrenner*, 499 S.W.2d 389, 395 (Mo.1973)).

Mr. Chandler argues that an employer/employee relationship existed between Respondents and himself because the undisputed facts show that the Board of Public Buildings has general supervision and charge over the Broadway State Office Building; that the Division of Facilities Management is the executive arm of the Board of Public Buildings and the Division's director has management and control over the office building; that pursuant to the vending facility contract be-

tween the Board of Public Buildings and the RSB, the RSB shall select a vendor to operate a cafeteria in the office building, the vendor shall abide by the rules listed in the contract that govern the vendor's conduct as a tenant, and all aspects of the vendor's operations that affect the building must be performed in a manner satisfactory to the Division; and that Mr. Allen made his request for Mr. Chandler's removal from service to the RSB pursuant to the vending facility contract. These facts, however, do not demonstrate as a matter of law that Respondents had the requisite right of control over Mr. Chandler to establish an employer/employee relationship. While the vending facility contract gave the Division of Facilities Management a certain amount of control regarding aspects of the vendor's operations that affect the building, the contract did not give Respondents direct supervisory authority over the employees hired by the vendor. Instead, the contract recognized and permitted the Director of the Division to carry out the duties imposed on him under section 8.110, RSMo 2000, including the duty to ensure that all facilities within his management and control are clean, safe, and secure as discussed above. Included within this duty may be the ability to demand the discharge of a person whose presence would interfere with this duty to ensure safety and security in the building. Respondents were not, however, responsible for all aspects of hiring and firing of vendor employees. Because an employer/employee relationship was not established, the trial court did not err in entering summary judgment in favor of Respondents on Mr. Chandler's wrongful termination claim. The point is denied.

### Equal Protection

Finally, Mr. Chandler argues that the trial court erred in granting summary judgment in favor of Respondents on his equal protection claim. He contends that he was denied equal protection when he was terminated from his employment because of his felony record in violation of section 561.016, RSMo 2000.

The trial court granted Respondents' motion for summary judgment on this claim stating that Mr. Chandler had not stated a claim in his petition for violation of his equal protection rights. Although as with Mr. Chandler's other claims, Respondents filed a motion for summary judgment on the equal protection claim, the trial court elected to treat this portion of the motion as a motion to dismiss. A trial court's ruling will be reviewed as a grant of a motion to dismiss, even though matters outside of the record were before the trial court, where nothing in the record suggests that the trial court considered anything other than the petition in ruling on a motion to dismiss. *Jordan v. City of Kansas City*, 972 S.W.2d 319, 322 (Mo.App. W.D.1998). The trial court did not rely on anything except the pleadings raised in Mr. Chandler's petition in reaching its decision. Mr. Chander's only allegation in his petition regarding his equal protection claim was the following:

That also because of the actions or the inactions of the respondents in getting and or allowing the wrongful termination of the petitioner from his job, denied petitioner's equality under the law and the right to the pursuit of happiness, in violation of Missouri State Constitution Article 1, Section 2.

Mr. Chandler's allegation of denial of equal protection in his petition was purely conclusory. *Mitchell v. Vill. of Edmundson*, 891 S.W.2d 848, 851 (Mo.App. E.D.1995). He did not plead any facts tending to establish such a claim. The trial court,

therefore, did not err in dismissing this claim. The point is denied.

The judgment is affirmed.[2]

SMART, P.J. and HOLLIGER, J., concur.

---

**2.** Because Respondents established their right to judgment as a matter of law on Mr. Chandler's claims for the reasons explained above, the issue of whether Respondents were protected from Mr. Chandler's claims by official immunity is not addressed.