STATE of Missouri, ex inf. Teresa
Hensley, Prosecuting Attorney,
Respondent,

v.

Herschel L. YOUNG, Appellant.

No. SC 91632.

Supreme Court of Missouri,
En Banc.

March 6, 2012.

Rehearing Denied May 1, 2012.

Charlie R. Dickman of The Law Offices of Charlie Dickman LLC, Kansas City, for Young.

Scott Wright and Teresa Hensley of the Cass County prosecutor's office, Harrisonville, for the State.

GEORGE W. DRAPER III, Judge.

Herschel L. Young (hereinafter, "Young") appeals from the circuit court's judgment after Teresa Hensley, prosecuting attorney for Cass County, (hereinafter, "Hensley") instituted a quo warranto action against him, resulting in his ouster from his position as Cass County presiding commissioner. Young raises three points on appeal, challenging the constitutional validity and applicability of section 115.350, RSMo 2000,[1] and raising equal protection arguments. The judgment is affirmed.

**Facts and Procedural History**

On December 21, 1987, Young pleaded guilty to the felony offense of unauthorized use of a motor vehicle in the district court of Bell County, Texas. The district court entered an order "deferring adjudication" and placed Young on probation for three years. Young completed probation and the "adjudication" was dismissed. On June 29, 1995, Young pleaded guilty to assault in the second degree, a class C felony, in Cass County, Missouri. Young was sentenced to one year imprisonment. The circuit court suspended execution of his sentence and placed him on supervised probation for three years. Young successfully completed his probation. The Missouri conviction was not recorded with the Missouri State Highway Patrol and remains absent from Young's criminal history.

On March 16, 2010, Young filed a declaration of candidacy for the office of presiding commissioner of Cass County. On November 2, 2010, Young received the majority vote for presiding commissioner. Young was sworn in and entered upon the duties of that office on January 1, 2011.

Hensley filed this quo warranto action on January 3, 2011, alleging Young usurped the office of Cass County presiding commissioner because he was not qualified to be a candidate for elective public office due to his 1995 felony conviction in Missouri. The circuit court entered its judgment granting Hensley's petition for

___

1. All statutory references are to RSMo 2000 as updated by RSMo Supp.2010.

quo warranto and ordering Young's ouster from office. Young now appeals.

## Standard of Review

 Since Young is challenging the validity of a statute, this Court has exclusive jurisdiction over this appeal under article V, section 3 of the Missouri Constitution.[2] *St. Louis County v. Prestige Travel, Inc.*, 344 S.W.3d 708, 712 (Mo. banc 2011). When a case is submitted on stipulated facts, the only question before this court is whether the circuit court drew the proper legal conclusions from those facts. *Mo. Prosecuting Attorneys v. Barton County*, 311 S.W.3d 737, 740 (Mo. banc 2010). Constitutional challenges to a statute are issues of law to be reviewed *de novo*. *Rentschler v. Nixon*, 311 S.W.3d 783, 786 (Mo. banc 2010).

## Constitutional Validity of Section 115.350

In his first point, Young argues the circuit court erred in ousting him from office in reliance upon section 115.350 because this statute violates article I, section 13 of the Missouri Constitution prohibiting retrospective application of the law. Young claims application of section 115.350 to him creates a new duty, obligation, or disability with respect to his 1995 felony conviction because it permanently forecloses him from running for office.

 A statute is presumed to be constitutional. *Dydell v. Taylor*, 332 S.W.3d

848, 852 (Mo. banc 2011). This Court will not invalidate a statute unless "it clearly and undoubtedly violates some constitutional provision and palpably affronts fundamental law embodied in the constitution." *State v. Richard*, 298 S.W.3d 529, 531 (Mo. banc 2009). Young, as the party challenging the statute's validity, bears the burden of proving the statute clearly and undoubtedly violates the constitution. *Id.*

Section 115.350 was enacted in 2007, several years after Young's conviction. It provides, "No person shall qualify as a candidate for elective public office in the State of Missouri who has been convicted of or found guilty of or pled guilty to a felony under the laws of this state."

### (1) Vested Right

 Article I, section 13 of the Missouri Constitution prohibits the enactment of any law that is "retrospective in its operation." A law is retrospective in operation if it takes away or impairs vested or substantial rights acquired under existing laws or imposes new obligations, duties, or disabilities with respect to past transactions. *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 769 (Mo. banc 2007). A vested right "must be something more than a mere expectation based upon an anticipated continuance of existing law." *Doe v. Phillips*, 194 S.W.3d 833, 852 (Mo. banc 2006) (quoting *Fisher v. Reorganized Sch. Dist. No. R–V*, 567 S.W.2d 647, 649 (Mo. banc 1978)).

**2.** In *State v. Olvera*, 969 S.W.2d 715 (Mo. banc 1998), this Court held its jurisdiction to adjudicate quo warranto actions that sought to remove officials from office was confined to whether the office in question was a "state office." *Id.* at 716. In that case, the Court explicitly held if the appeal did not involve title to any state office, jurisdiction was vested with the court of appeals, not this Court. *Id.* Several cases were noted that no longer should be followed to the extent they implied

jurisdiction of an appeal contrary to that opinion. *Id.* at 716 n. 1. One of the cases is *State ex inf. Atty. Gen. v. Shull*, 887 S.W.2d 397 (Mo. banc 1994), involving the ouster of the presiding commissioner of Clay County. The office of presiding commissioner of Cass County is not a "state office" per the holding in *Olvera*. However, Young's appeal challenges the validity of a state statute, and as such, this appeal is properly before this Court.

Young has no vested right in the election qualification laws remaining unchanged. *Id.* He also has no vested right to be free from further collateral consequences from his prior guilty plea. *Id.* However, Young's failure to demonstrate a vested right is not fatal to his argument. A vested right is not needed to invoke the constitutional principles contained in article I, section 13. *F.R. v. St. Charles County Sheriff's Dept.,* 301 S.W.3d 56, 62 (Mo. banc 2010). The vested rights reference is a disjunctive option, and therefore, Young did not have to demonstrate a vested right to prevail on his claim. *Id.*

*(2) New Obligation, Duty or Disability*

Young's argument encompasses the second disjunctive option, that section 115.350 imposes a new obligation, duty or disability solely because he has a prior felony conviction. Young claims this Court's analysis in *F.R.* is dispositive because his 1995 conviction predates the enactment of section 115.350, thereby imposing a new obligation, duty or disability on him. Specifically, Young contends the statute imposes upon him an affirmative obligation to refrain from running for elective office and, by extension, from holding office.

In *F.R.,* this Court held two statutes were unconstitutional as applied to F.R. and Raynor when they imposed new obligations and duties on them solely as a result of their prior sex offense convictions, and their failure to perform these new duties and obligations carried criminal penalties. *F.R.,* 301 S.W.3d at 66. The first statute imposed upon F.R. a duty to determine whether the residence to which he wished to move was within 1,000 feet of a school or day care facility. *Id.* at 63. This obligation was imposed on F.R. years after his conviction and required his performance under threat of criminal penalty. *Id.* The second statute imposed four obli-

gations or duties upon Raynor to be carried out on Halloween, which included: (1) avoiding contact with children; (2) remaining inside his residence; (3) posting a sign on his door; and (4) leaving his light off. *Id.* Like *F.R.,* these obligations were imposed years after Raynor's conviction and required him to perform or be subjected to criminal penalties. *Id.* The Court found the challenged statutes "simply impose new obligations or duties on F.R. and Raynor, giving new legal effect to their prior convictions" and accordingly, were retrospective when applied to them. *Id.*

This Court was mindful of the difficulties in distinguishing "the retroactive effect of this law from the ordinary regulatory actions that may take into account past conduct or past conditions in providing current or prospective regulation." *Id.* Further, this Court recognized a slippery slope wherein "it could be well claimed that no statute could be enacted imposing new duties upon or giving new privileges or rights to a person already born ... [or] to a corporation already created." *Id.* at 64 (quoting *Squaw Creek Drainage Dist. v. Turney,* 235 Mo. 80, 138 S.W. 12, 16 (1911)).

Young's argument attempts to go down this slippery slope. Section 115.350 does not impose any new obligation or duty on Young because he has no affirmative obligation to take any action whatsoever to comply with section 115.350. *Cf. F.R.; Doe v. Phillips,* 194 S.W.3d at 852 (statute that imposed a new obligation and duty on sex offenders to register, maintain, and update registration based solely on their offenses prior to the statute's enactment was retrospective in operation). Moreover, "[a] statute is not retrospective or retroactive because it relates to prior facts or transactions but does not change their legal effect, or because some of the requisites for its action are drawn from a

time antecedent to its passage, or because it fixes the status of an entity for purpose of its operation." *Jackson v. Members of Missouri Bd. of Probation & Parole*, 301 S.W.3d 71, 71–72 (Mo. banc 2010) (quoting *Jerry–Russell Bliss v. Hazardous Waste*, 702 S.W.2d 77, 81 (Mo. banc 1985)). While section 115.350 relates to Young's 1995 conviction and forecloses his ability to qualify to run for office, its operation does not change the legal effect of his conviction.

Young also attempts to draw a parallel between his claim and those of F.R. and Raynor by arguing he will be subjected to criminal penalties under the election statutes based solely upon his 1995 conviction. In *F.R.*, this Court stated both men would be subject to criminal penalties if they failed to comply with the laws as applied to them and that an essential element to be proven if felony charges were brought was that they both were convicted sex offenders. *Id.* at 63. Likewise, Young argues his 1995 conviction would be an essential element of any felony charge brought pursuant to section 115.631 concerning the averments contained in his declaration of candidacy form.

Section 115.349.1 provides that every candidate must file a written declaration of candidacy prior to having his or her name placed on the ballot. Section 115.349.3 requires the written declaration contain a statement that "if nominated and elected he or she will qualify." This declaration must be subscribed and sworn under oath. *Id.* Section 115.631 sets forth felony election offenses connected with the exercise of the right of suffrage. This section includes falsely making any statement on the declaration of candidacy form.

The declaration of candidacy requirements apply to all candidates, not only those who have a felony conviction. Young's obligation to prepare the declara-

tion only arises because of his desire to run for office, not his 1995 conviction. Young filed his written declaration of candidacy and averred he was qualified to be elected as presiding commissioner. In contrast to the sex offenders in *F.R.*, any possible criminal consequences Young may suffer pursuant to section 115.631 would not arise *solely* because of his 1995 conviction, but rather, would arise because the averment he included in his declaration of candidacy that "if nominated and elected he … will qualify" was false. Any persons, previously convicted or otherwise, would be subject to criminal liability under section 115.631 if they included false assertions in the declaration of candidacy form, unlike the sex offenders in *F.R.*, who were subject to liability *solely* due to their status as sex offenders.

Section 115.350, as applied to Young, does not operate retrospectively in violation of the constitution. Young's first point is denied.

### Appropriateness of Quo Warranto Proceedings

 Young next argues that even if this Court finds section 115.350 constitutional, the circuit court still committed error ordering his ouster based upon Hensley's quo warranto petition. Young raises four grounds to support his claim.

*(1) Quo Warranto is Appropriate Remedy*

Young claims quo warranto is only appropriate to determine an office holder's legal right to "hold" office, not his qualifications for candidacy or his legal right to "run" for office. Since the circuit court relied upon section 115.350, which only speaks to Young's qualifications to run for office, he contends its judgment ousting him from office by way of a quo warranto proceeding was improper.

Section 531.010 permits the attorney general or the prosecuting attorney of a particular county to institute quo warranto proceedings in cases when "any person shall usurp, intrude into or unlawfully hold or execute any office or franchise. . . ." "Quo warranto is a writ of very ancient origin, dating back to the earliest days of the common law. Its original purpose was to inquire into the legality of the claim of one who purported to have the right to enjoy and exercise a particular office granted by the Crown." *State v. Kinder*, 89 S.W.3d 454, 457 (Mo. banc 2002). The sole purpose of a quo warranto proceeding is to "prevent an officer or a corporation or persons purporting to act as such from usurping a power which they do not have." *Id.* (quoting *State ex inf. McKittrick v. Murphy*, 347 Mo. 484, 148 S.W.2d 527, 530 (Mo. banc 1941)).

Missouri caselaw dating back to 1895 has addressed this issue. In *State ex rel. Weed v. Meek*, 129 Mo. 431, 31 S.W. 913 (Mo.1895), this Court affirmed the judgment of ouster in a quo warranto proceeding finding the candidate had no lawful right to hold office when he did not obtain a teaching certificate as required to be eligible for election as a school commissioner. The Court found the candidate did not "possess the requisite qualifications to be elected, and to hold the office by virtue thereof." *Id.* at 915. In *State ex rel. Thomas v. Williams*, 99 Mo. 291, 12 S.W. 905 (Mo.1889), this Court found the legislature could prescribe the conditions that shall be performed or exist by a certain time for a candidate to qualify for office, and in the absence of meeting these conditions or requirements, "the candidate shall not possess the attributes of eligibility on the day of the election." *Id.* at 911. The Court determined that if candidates do not meet the requirements imposed by statute to run for office, "they shall not be deemed qualified at all." *Id.* In *State ex rel. Crow*

*v. Page*, 140 Mo. 501, 41 S.W. 963 (Mo. 1897), this Court affirmed the judgment of ouster in a quo warranto action in which the candidate elected failed to pay his taxes prior to the election. Since the law required the candidate to do so as a condition of eligibility to run for the office, this Court found ouster was proper. *Id.* In *State on inf. of McKittrick v. Wiley*, 349 Mo. 239, 160 S.W.2d 677 (Mo.1942), this Court affirmed the order of ouster in a quo warranto proceeding in which the elected candidate did not meet the pre-election residency requirements to run for prosecuting attorney. The candidate did not possess the requisite qualifications to be elected or hold office and, therefore, had no legal right to said office. *Id.* at 687.

Young attempts to distinguish all of these cases by arguing they did not state the ousted officials were not qualified to have their names placed on the ballot for the election, but instead merely found the ousted officials were not qualified to hold office at the conclusion of the election. It is axiomatic that one of the requisites to being qualified to hold office is that the person seeking office be a valid candidate and comply with statutory provisions regarding candidacy. Moreover, in *Kasten v. Guth*, 395 S.W.2d 433, 437–38 (Mo.1965), this Court held, "The general rule is that the eligibility of candidates is not a competent issue in an election contest. . . . An inquiry into [the candidate's] eligibility for office would properly be by quo warranto."

*(2) Quo Warranto not Superseded by Comprehensive Election Reform Act of 1977*

In the alternative, Young argues if quo warranto was the appropriate remedy to oust unqualified candidates who hold elected office under this Court's long-standing precedent, the legislature chose to abrogate this law by enacting the Com-

prehensive Election Reform Act of 1977. Young specifically cites section 115.526, which provides the statutory mechanism for candidates to challenge the qualifications of any other candidate to the same office. Young refers to this section's deadlines that he claims provide evidence of the legislature's intent disfavoring elongated challenges to candidate qualifications and promoting finality and conclusiveness in state elections.

While Young asserts this is the only mechanism to challenge the qualifications of a candidate, the statute does not make that intention clear. The plain language of section 115.526 permits other candidates to challenge their opponents' qualifications in a private cause of action. Filing an action pursuant to section 115.526 is distinguishable from a quo warranto proceeding, which must be instituted by the attorney general or a prosecuting attorney and whose purpose is to determine lawful title to office and may be predicated upon whether the person challenged holds the requisite qualifications. The right to institute a quo warranto proceeding has not been superseded by this statute.

### (3) Applicability of Section 561.021

Young next argues he is qualified to hold office pursuant to section 561.021.2. Young submits he completed probation several years before seeking office as presiding commissioner and this section prevents his ouster from office.

Section 561.021.2 provides:

[A] person who pleads guilty or nolo contendere or is convicted under the laws of this state of a felony or under the laws of another jurisdiction of a crime which, if committed within this state, would be a felony, shall be ineligible to hold any public office, elective or appointive, under the government of this state or any agency or political subdivi-

sion thereof, until the completion of his sentence or period of probation.

Young's obligation to comply with the statutory requirements of section 115.350 and demonstrate he is qualified for candidacy does not conflict with his purported eligibility to hold office under section 561.021. These are two distinct issues that both must be addressed before a candidate may take office. Application of section 561.021 to Young does not change the fact that he first had to demonstrate he was qualified to be a candidate under section 115.350 before taking office after the election.

### (4) Applicability of Section 561.016

■ Finally, Young argues section 115.350 conflicts with section 561.016. Young asserts section 115.350 does not define sufficiently what constitutes a "felony under the laws of this state" to comply with section 561.016.1(3) so as to impose a legal disqualification or disability upon him.

Section 561.016.1 states:

No person shall suffer any legal disqualification or disability because of a finding of guilt or conviction of a crime or the sentence on his conviction, unless the disqualification or disability involves the deprivation of a right or privilege which is

(1) Necessarily incident to execution of the sentence of the court; or

(2) Provided by the constitution or the code; or

(3) Provided by a statute other than the code, when the conviction is of a crime defined by such statute; or

(4) Provided by the judgment, order or regulation of a court, agency or official exercising a jurisdiction conferred by law, or by the statute defining such jurisdiction, when the commission of the crime or the conviction or the sentence is reasonably related

to the competency of the individual to exercise the right or privilege of which he is deprived.

Section 561.016.1(3) requires the conviction to be defined by statute. Young asserts this means section 115.350 was required to list each specific felony under Missouri law in order to apprise the reader sufficiently of the specific conduct that carries with it the consequences of legal disqualification or disability. Young's reading of section 561.016.1(3) defies logic and practicality. Section 115.350 provides sufficient notice of the conduct that will result in a legal disability or disqualification.

Young also contends section 561.016 restores his legal right to hold office in contravention of section 115.350. In *Chandler v. Allen*, 108 S.W.3d 756 (Mo.App. W.D. 2003), the court analyzed the purpose of section 561.016 and discerned the legislature's intent in enacting it. *Chandler* explained:

> Not all disqualifications or disabilities that historically have resulted from conviction of a criminal felony statute are encompassed by section 561.016. The legislature has not expressed intent within the statute to make a protected class of convicted felons who have concluded the penalty for their miscreant activity. Significant in understanding the purpose of the statute is the included phrase "legal disqualification or disability." The statute expresses the intent of the General Assembly to remove much of the legal stigma resulting from conviction for a felony.... Legal disqualifications or disabilities are those disqualifications and disabilities imposed by law that restrict the legal ability of a convicted person to participate in civil activities and to enjoy certain rights ascribed to citizenship. To reduce the several legal disqualifications and disabilities historically imposed on convicted

felons and to articulate the identification of those not otherwise articulated and imposed by statute, the General Assembly has provided that convicted felons will not suffer from "legal disqualification or disability" as a result of their convictions, except as provided by state constitution, code, or statute. The legislature's grant of social reinstatement of convicted felons is not comprehensive, however. The General Assembly has continued to disqualify convicted felons by statute from enjoying several activities attendant to citizenship within our culture....

> The prohibition from imposing legal disqualification or disability as articulated by section 561.016 is limited by the provisions of subparagraphs (1) through (4). These subparagraphs provide that a state constitution provision, code, or statute specifically disqualifying or restricting a convicted felon's participation in civil life is excluded from section 561.016.1. The result of the remaining legal disqualifications and disabilities not eliminated by section 561.016 and other statutes means that the convicted felon is not returned to full enjoyment of citizenship....

*Chandler*, 108 S.W.3d at 761–62 (citations omitted).

While it is evident the legislature intended to restore some of the legal disqualifications and disabilities convicted felons previously suffered by enacting section 561.016, it did not eliminate all disabilities. *Id.* at 762. Young's second point is denied.

### Equal Protection

In his final point, Young argues the circuit court erred in ousting him from office because section 115.350 violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and article I, section 2 of the Missouri

Constitution. Young claims the statute treats similarly situated persons differently by preventing felons convicted in Missouri from running for elected office but allows felons convicted in other jurisdictions to seek election. Young believes section 115.350 deprives him of his constitutionally protected right to participate in elections on an equal basis with other similarly situated citizens and treats him more harshly than citizens who have committed more serious crimes.

### (1) Standing

■▬▬▬ Before addressing the merits of Young's equal protection argument, the Court must determine whether he has standing to bring this constitutional challenge. *Missouri State Medical Ass'n v. State*, 256 S.W.3d 85, 87 (Mo. banc 2008). Standing is a question of law this Court reviews *de novo*. *Id.* "Generally, only those adversely affected by a statute have standing to challenge the constitutionality of the statute." *Lester v. Sayles*, 850 S.W.2d 858, 873 (Mo. banc 1993). "Reduced to its essence, standing roughly means that the parties seeking relief must have some personal interest at stake in the dispute, even if that interest is attenuated, slight or remote." *Ste. Genevieve School District R–II v. Board of Aldermen of City of Ste. Genevieve*, 66 S.W.3d 6, 10 (Mo. banc 2002).

■▬▬ Hensley argues Young lacks standing to attack section 115.350 on the basis of equal protection by claiming it distinguishes between Missouri felons and felons from other jurisdictions because Young has pleaded guilty to offenses in Missouri and Texas. Hensley asserts section 115.350 would disqualify him in either instance under a plain reading of the statute. This Court disagrees. Section 115.350 clearly confines itself to a person "who has been convicted of or found guilty

of or pled guilty to a felony *under the laws of this state.*" (Emphasis added).

The circuit court determined Young lacked standing to raise this issue but for a different reason. The circuit court found Young's 1987 guilty plea in Texas did not result in a felony conviction due to his "deferred adjudication." In Texas, "[u]nder the deferred adjudication scheme, a judge does not make a 'finding of guilt'; instead the judge makes a finding that the evidence 'substantiates the defendant's guilt' and then defers the adjudication. . . . A deferred adjudication is often referred to as a deferral on the finding of guilt." *Donovan v. State*, 68 S.W.3d 633, 636 (Tex. Crim.App.2002). Since a defendant under a "deferred adjudication" has not been found guilty, it follows he has not been convicted. *Id.* at 636 n. 11 (quoting *Watson v. State*, 924 S.W.2d 711, 715 (Tex. Crim.App.1996)).

Since Young is not a convicted felon in Texas, he has no standing to raise the application of section 115.350 to felons from other jurisdictions. However, he does have standing to raise constitutional challenges to the statute on behalf of felons convicted in Missouri based upon his 1995 conviction.

### (2) Suspect Class or Fundamental Right

■▬▬ The United States Constitution provides, "No state shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV. Article I, section 2 of the Missouri Constitution provides in pertinent part, "[A]ll persons are created equal and are entitled to equal rights and opportunity under the law." Missouri's equal protection clause provides the same protections as the United States Constitution. *In re Care and Treatment of Coffman*, 225 S.W.3d 439, 445 (Mo. banc 2007).

■ In deciding whether a statute violates equal protection, this Court engages in a two-part analysis. *Etling v. Westport Heating & Cooling Services, Inc.*, 92 S.W.3d 771, 774 (Mo. banc 2003). First, the Court determines whether a classification of certain persons under the law "operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution." *Id.* (quoting *Marriage of Kohring*, 999 S.W.2d 228, 231–32 (Mo. banc 1999)) (citations omitted). If so, the classification is subject to strict scrutiny, and this Court must determine whether the classification is necessary to accomplish a compelling state interest. *Id.*

■ Suspect classes are classes such as race, national origin, or illegitimacy that "command extraordinary protection from the majoritarian political process" for historical reasons. *Id.* (quoting *Riche v. Dir. of Revenue*, 987 S.W.2d 331, 336 (Mo. banc 1999)) (citations omitted). The plain language of section 115.350 does not create a classification in that it applies to all persons who have been convicted of, found guilty of, or pleaded guilty to a felony under Missouri law. Young believes the classification arises when Missouri felons are treated differently from those convicted of felonies in other jurisdictions, but he does not argue felons are a suspect class. Young's argument focuses on how this classification impinges on a fundamental right. "Fundamental rights include the rights to free speech, to vote, to freedom of interstate travel, and other basic liberties." *Etling*, 92 .S.W.3d at 774. A candidate's access to the ballot or the right to run for office is not a "fundamental right." *Clements v. Fashing*, 457 U.S. 957, 963, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982); *Asher v. Lombardi*, 877 S.W.2d 628, 630 (Mo. banc 1994).

*(3) Level of Scrutiny*

■ The second step of the analysis requires the application of the appropriate level of scrutiny to the challenged statute. *Weinschenk v. State*, 203 S.W.3d 201, 211 (Mo. banc 2006). Since section 115.350 does not operate to the disadvantage of a suspect class nor impinge upon a fundamental right, it will withstand constitutional challenge if the classification bears some rational relationship to a legitimate state purpose. *Mo. Prosecuting Attorneys & Circuit Attorneys Ret. Sys. v. Pemiscot County*, 256 S.W.3d 98, 102 (Mo. banc 2008). This Court presumes statutes have a rational basis, and the party challenging the statute must overcome this presumption by a "clear showing of arbitrariness and irrationality." *Foster v. St. Louis County*, 239 S.W.3d 599, 602 (Mo. banc 2007) (quoting *Fust v. Attorney General for the State of Missouri*, 947 S.W.2d 424, 432 (Mo. banc 1997)). Rational basis review does not question "the wisdom, social desirability or economic policy underlying a statute," and a law will be upheld if it is justified by any set of facts. *Comm. for Educ. Equality v. State*, 294 S.W.3d 477, 491 (Mo. banc 2009) (quoting *Mo. Prosecuting Attorneys*, 256 S.W.3d at 102).

■ Section 115.350's disqualification of Missouri felons from being candidates for elective public office has a rational basis under the law.

> The public is entitled to the service of public officials who are of the highest character. It is of paramount importance to the people to have confidence in the honor and integrity of public officials. Society expects much from its public officials and rightly so. The public interest demands that public affairs be administered by officers upon whom rests no stigma of conviction of a felony.

*State ex inf. Peach v. Goins*, 575 S.W.2d 175, 183 (Mo. banc 1978). This Court dis-

cussed section 115.350 and how its candidate disqualification amendments fit well within the core subject of ethics. *See Trout v. State*, 231 S.W.3d 140, 146 (Mo. banc 2007) (holding this section should not have been invalidated and severed for original purpose and single subject violations). The State has a legitimate interest in maintaining the public's confidence in the honesty and integrity of their elected officials. This interest is promoted by disqualifying those individuals who have demonstrated an inability to follow the laws of this state.

Young acknowledges the legislature may restrict candidacy based upon certain prior criminal conduct and that this disqualification is a reasonable means of safeguarding the honesty and integrity of public officials exercising governmental power. However, he argues this is not a rational basis to disqualify Missouri felons while simultaneously finding felons from other jurisdictions are qualified to apply for candidacy to elected office. Young's point is well-taken, but that is an issue to be addressed by the legislature, not this Court.

### (4) Elected v. Appointed Felons

Finally, Young argues section 115.350 creates an additional unequal classification in that it treats Missouri felons who run for elective office differently from Missouri felons who are appointed to public office. As an example, Young cites language from section 561.021.2 that disqualifies Missouri felons, whether they hold elective or appointive office, until the completion of their sentences or periods of probation. Young's argument fails because he cannot demonstrate these classes of felons are similarly situated. There is a clear distinction between being elected to public office by the citizens of the state and being appointed to an office by an appointing authority that ostensibly performs a vetting process to determine the qualification of its appointees.

Young failed to demonstrate section 115.350 violates the equal protection laws under the United States or Missouri Constitution. Young's third point is denied.

### Conclusion

Section 115.350 is constitutional as applied to Young and does not violate the constitutional guarantees of equal protection. The circuit court's judgment is affirmed.

All concur.