Roy **GAROZZO**, Respondent,

v.

**MISSOURI DEPARTMENT OF INSUR-ANCE, FINANCIAL INSTITUTIONS & PROFESSIONAL REGISTRA-TION, DIVISION OF FINANCE**, Appellant.

No. SC 92152.

Supreme Court of Missouri, En Banc.

Jan. 29, 2013.

Erwin O. Switzer III and Jennifer Mann Bortnick, Greensfelder, Hemker & Gale PC, St. Louis, for Garozzo.

James R. McAdams and James W. Gallaher, Missouri Department of Insurance, Financial Institutions & Professional Registration, Jefferson City, for the Division.

RICHARD B. TEITELMAN, Chief Justice.

Section 443.713(2)(a)[1] provides that the director of the Missouri Division of Finance shall not issue a mortgage loan originator license to an applicant who has been convicted of or pleaded guilty to a felony within seven years prior to the date of the application. The trial court held that the statute violates portions of the Missouri Constitution: (1) the article I, section 30 ban on bills of attainder; (2) the article I, section 13 ban on retrospective laws; and (3) the article I, section 10 guarantee of due process. The director appeals. The judgment is reversed.

## FACTS

Ray Garozzo began working as a mortgage loan originator in 1985. At that time, there was no licensing requirement for mortgage loan originators. In 2006, Garozzo pleaded guilty to a class C felony of possession of a controlled substance. Garozzo received a suspended imposition of sentence that was conditioned on the completion of several provisions. Garozzo completed these conditions.

In 2008, Congress enacted the Secure and Fair Enforcement Mortgage Licensing Act of 2008 (SAFE Act). The SAFE Act established a nationwide licensing requirement for mortgage loan originators. 12 U.S.C. § 5101. The SAFE Act provides that the federal government will establish a licensing system in any state that declines to adopt a licensing and registration law that complies with the minimum requirements of the SAFE Act. 12 U.S.C. § 5107(a).

---

1. All statutory references are to RSMo 2011 Cum.Supp.

In 2010, the General Assembly enacted the Missouri Secure and Fair Enforcement Mortgage Licensing Act (Missouri SAFE Act).[2] The division of finance is responsible for administering the law. Section 443.703.1(6). As required by the federal SAFE Act, the Missouri SAFE Act provides that "[n]o individual ... shall engage in the business of a mortgage loan originator ... without first obtaining and maintaining a license...." Section 443.706.1. The Missouri SAFE Act also prohibits the director from issuing a mortgage loan originator's license to an applicant who has pleaded guilty to a felony within seven years prior to the date of the application. Section 443.713(2)(a).

In July 2010, Garozzo submitted an application for a mortgage loan originator license. The director denied the application pursuant to section 443.713(2)(a) because Garozzo had pleaded guilty to a felony in 2006. Garozzo filed a notice of appeal with the residential mortgage board. The board held a hearing and determined that section 443.413(2)(a) required the board to deny Garozzo's license application.[3]

Garozzo then filed a petition for review in the circuit court. The circuit court entered a declaratory judgment finding that section 443.713(2)(a) was unconstitutional as applied to Garozzo in that the statute constituted a bill of attainder, violated the article I, section 13 ban on retrospective laws, and violated Garozzo's rights to substantive and procedural due process. The circuit court ordered the director to issue a license to Garozzo. The director appeals.

**2.** The Missouri Safe Act is codified in sections 443.071 to 443.893.

**3.** The board also found that Garozzo never had been the subject of any complaint regard-

## ANALYSIS

### I. Standard of Review

 Where a contested case is decided by an agency and reviewed by a circuit court, this Court reviews the findings and decision of the agency rather than the circuit court. *Morton v. Brenner,* 842 S.W.2d 538, 540 (Mo. banc 1992). In this case, there is no factual dispute. The sole issue is whether section 443.713(2)(a) violates the constitutional provisions identified by Garozzo. This Court engages in de novo review of the agency's legal determinations. *Stone v. Missouri Dept. of Health and Senior Services* 350 S.W.3d 14, 20 (Mo. banc 2011). A statute is presumed to be constitutional and will not be invalidated unless "it clearly and undoubtedly violates some constitutional provision and palpably affronts fundamental law embodied in the constitution." *State v. Young,* 362 S.W.3d 386, 390 (Mo. banc 2012)(quoting *State v. Richard,* 298 S.W.3d 529, 531 (Mo. banc 2009)). Garozzo, as the party challenging the statute's validity, bears the burden of proving the statute clearly and undoubtedly violates the constitution. *Id.*

### II. Bill of Attainder

 Garozzo asserts that section 443.713(2)(a) violates the state and federal constitutional bans on bills of attainder. U.S. Const. article I, section 10; Mo. Const. article I, section 30. A bill of attainder is a legislative enactment that inflicts punishment on a specific person or group without trial or judicial action. *Doe v. Phillips,* 194 S.W.3d 833, 848 (Mo. banc 2006); citing *State ex rel. Bunker Res. Recycling & Reclamation, Inc. v. Mehan,* 782 S.W.2d 381, 386 (Mo. banc 1990). To

ing his work as a mortgage loan originator. The board also noted that Garozzo's employer, colleagues and customers praised his work.

invalidate section 443.713(2)(a) as a bill of attainder, Garozzo must demonstrate that the statute "singles out a 'specifically designated person or group'" and "inflicts punishment on that person or group." *Doe,* 194 S.W.3d at 848, quoting *Selective Service System v. Minnesota Public Interest Research Group, et al,* 468 U.S. 841, 104 S.Ct. 3348, 82 L.Ed.2d 632 (1984). The first element is referred to as the specificity element and the second as the punishment element. *Bunker,* 782 S.W.2d at 386.

■ It is unnecessary in this case to determine whether the specificity element is satisfied because section 443.713(2)(a) does not inflict punishment. There are three factors that determine whether a statute inflicts punishment: (1) whether the challenged statute falls within the historical meaning of legislative punishment, (2) whether the statute, viewed in a light of the severity of burdens it imposes, reasonably can be said to advance a non-punitive legislative purpose and (3) whether the legislative record discloses an intent to punish. *Bunker,* 782 S.W.2d at 387; citing *Selective Service System,* 468 U.S. 841, 104 S.Ct. 3348 (1984).

The historical meaning of legislative punishment generally includes statutes that bar a specific person or identifiable group from participating in a regulated business or profession. *Bunker,* 782 S.W.2d at 387. For instance, in *Cummings v. State of Missouri,* 4 Wall. 277, 18 L.Ed. 356 (1866), the United States Supreme Court invalidated as a bill of attainder a provision of Missouri's 1865 Constitution that prohibited a priest from practicing his profession without taking an oath that he had not participated in the rebellion against the Union, which amounted to punishment. *See also United States v. Lovett,* 328 U.S. 303, 106 Ct. Cl. 856, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946) (statute barring named individuals from ever receiving compensation for employment with the United States government was legislatively imposed punishment); *United States v. Brown,* 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965)(statute barring members of the Communist party from becoming officers of labor unions was a punishment). These cases support a finding that there is a punitive aspect to statutes that exclude an individual or identifiable group from engaging in a particular profession.

Although there are a number of cases indicating a historical trend of treating bans on employment as punishment, history is not dispositive. *Bunker,* 782 S.W.2d at 387. This because the second and third analytical factors more directly look at the particular aspects of the challenged statute to determine if the challenged statute is punitive in practice and by design.

The second analytical factor requires a court to determine whether the statute, when viewed in light of the severity of burdens it imposes, reasonably can be said to advance a non-punitive legislative purpose. For instance, in *Hawker v. People of New York,* 170 U.S. 189, 18 S.Ct. 573, 42 L.Ed. 1002 (1898), the Court held that a statute prohibiting convicted felons from practicing medicine did not constitute a punishment in violation of the bill of attainder clause because a legitimate legislative purpose was advanced by ensuring that only persons of good character practice medicine. Section 443.713(2)(a) is analogous to the statute at issue in *Hawker* because it advances the non-punitive purpose of assuring that professional services are provided by law-abiding individuals. The non-punitive nature of section 443.713(2)(a) is further demonstrated by the fact that an applicant is barred from licensure for a maximum of seven years. Finally, section 443.713(2)(a) is a licensing

statute, and Missouri courts have held consistently that "the purpose behind licensing statutes is to protect the public rather than to punish the licensed professional." *Duncan v. Missouri Bd. of Architects, Professional Engineers and Land Surveyors,* 744 S.W.2d 524, 531–532 (Mo.App. 1988). Considered in context, section 443.713(2)(a) does not reflect a punitive purpose.

The final factor requires courts to consider whether the legislative record discloses intent to punish. The legislative record leading to the enactment of section 443.713(2)(a) indicates no intent to punish. To the contrary, the stated goals of the federal SAFE Act are to enhance consumer protection, reduce fraud, provide for comprehensive licensing, and provide for increased accountability and tracking of loan originators. 12 U.S.C. § 5101. The Missouri SAFE Act was enacted to comply with the requirements of the federal SAFE Act. There is nothing in the legislative record that discloses any intent to punish.

Although the temporary license restriction imposed by section 443.713(2)(a) imposes an obvious hardship on Garozzo, the statute is, in practice and by design, a valid business and economic regulation as opposed to an invalid bill of attainder. As applied to Garozzo, the statute is not an unconstitutional bill of attainder.

### III. Retrospective Law

■ Article I, section 13 of the Missouri Constitution provides:

> That no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be enacted.

Garozzo asserts that section 443.713(2)(a) violates article I, section 13 because the statute prevents him from continuing to serve as a mortgage loan originator due to his guilty plea, which predated the effective date of section 443.713(2)(a).

■ Retrospective or retroactive laws are "those which take away or impair vested rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability in respect to transactions or considerations already past." *F.R. v. St. Charles County Sheriff's Dept.,* 301 S.W.3d 56, 62 (Mo. banc 2010).

#### (a) Vested right

■ Missouri courts have held consistently that a professional license is a privilege and not a vested right. *Missouri Real Estate Com'n v. Rayford,* 307 S.W.3d 686, 699 (Mo.App.2010), citing *State Bd. of Registration for Healing Arts v. Boston,* 72 S.W.3d 260, 266 (Mo.App.2002) (a professional license is a privilege granted by the state); *State ex rel. Schneider's Credit Jewelers v. Brackman,* 260 S.W.2d 800, 814 (Mo.App.1953) (a professional license in the healing arts is a privilege); *State Bd. of Registration for the Healing Arts v. Giffen,* 651 S.W.2d 475, 479 (Mo. banc 1983); *State v. Davis,* 194 Mo. 485, 92 S.W. 484, 489 (1906) ("[T]here can be no such thing as a vested right in the practice of medicine"). Garozzo does not have a vested right to a mortgage loan originator license.

#### (b) New obligation, duty, or disability

Garozzo also argues that section 443.713(2)(a) imposes a new obligation, duty or disability based solely on past conduct because he will be subject to civil penalties if he continues to serve as a mortgage loan originator without first obtaining a license. Garozzo's argument is similar to the argument rejected in *State v. Young,* 362 S.W.3d 386 (Mo. banc 2012).

In *Young*, the trial court granted a petition for *quo warranto* to remove Herschel Young, a county commissioner, from his office pursuant to section 115.350. Section 115.350 was enacted in 2007 and provides that "[n]o person shall qualify as a candidate for elective public office in the State of Missouri who has been convicted of or found guilty of or pled guilty to a felony under the laws of this state."

Young asserted that section 115.350 violated the ban on retrospective laws because it imposed a new duty, obligation, or disability with respect to his 1995 felony conviction. This Court rejected that argument and held that the statute imposed no new duty or obligation on Young because he was under no affirmative obligation to take any action at all to comply with section 115.350. *Young*, 362 S.W.3d at 391. Section 115.350 applied only because Young decided to run for office and submit himself to the statutory requirements. Likewise, the licensing requirements of section 443.713(2)(a) apply to Garozzo only because he has decided that he wants to continue to serve as a mortgage loan originator. Section 443.713(2)(a) does not independently require anything of Garozzo and, therefore, imposes no new obligation *or duty on him based on his prior guilty* plea.

Garozzo also argues that section 443.713(2)(a) creates a new disability because it prevents him from engaging in his profession and threatens him with fines if he does. Garozzo relies on *Rayford* to support his argument.

In *Rayford*, the Missouri Real Estate Commission (MREC) appealed from a Missouri Administrative Hearing Commission (AHC) decision holding that Rayford was entitled to retain his real estate salesperson's license even though section 339.100.5, which became effective in 2006, mandated the revocation of Rayford's li-

cense because of a 1970 conviction for second degree murder. The court of appeals affirmed the AHC decision allowing Rayford to retain his license in part because "section 339.100.5, which retroactively converts an antecedent criminal conviction into a per se basis for ineligibility to hold a real estate license, would be unconstitutionally retrospective if applied to mandate the revocation of a real estate license in force on the statute's effective date based solely on the antecedent criminal proceeding." *Id.* at 695.

■ *Rayford* is distinguishable because section 339.100.5 revoked a license that Rayford held prior to enactment of the statute while, in this case, section 443.713(2)(a) does nothing more than temporarily prevent the director from issuing a license to Garozzo in the first place. Although section 443.713(2)(a) impacts Garozzo, it does not violate article I, section 13 because the ban on retrospective laws does not prohibit the application of a licensing statute to "bar an applicant with an antecedent qualifying criminal offense from being denied" a license. *Id.* 695. "Consideration of an antecedent event in connection with a future desire to secure licensure, even where the antecedent event would not previously have been a per se basis for ineligibility, is not a retrospective application" of a licensing statute such as section 443.713(2)(a). *Id.* at 696. The ban on retrospective law does not prohibit the state from considering past conduct in connection with determining licensing eligibility in the future. *Id.*

The rationale in *Rayford* is consistent with this Court's prior cases indicating that there is no article I, section 13 violation when a statute identifies the regulatory issue with reference to a past action but application of the statute is based on the need for a prospective regulatory solution. *See, e.g., State ex rel. Koster v. Olive*, 282

S.W.3d 842, 848 (Mo. banc 2009)(a statute requiring dam owners to obtain a permit did not violate article I, section 13 because it is not the past action that is the sole reason for the requirement; it is the present situation and need for present protection that justifies the permit requirement for preexisting structures). Similarly, in *F.R.*, 301 S.W.3d at 62, the Court explained that the concept of a "disability" would not apply to a law that prevented a school board from hiring as a guidance counselor anyone who previously was convicted of a certain crime. In that case, there would be no disability because the law does not require the prospective employee to do anything and the regulatory obligation is on the school board. Likewise, in this case, section 443.713(2)(a) does not require Garozzo to undertake any action and the regulatory obligation is on the director. Section 443.713(2)(a) does not violate article I, section 13.

### IV. Due Process

Garozzo's final argument is that section 443.713(2)(a) violates his right to procedural and substantive due process.

### (a) Procedural Due Process

 Professional licenses are "property" for the purposes of the Fourteenth Amendment to the United States Constitution; consequently, procedural due process is required before the government may deprive anyone of his or her professional license. *See Stone,* 350 S.W.3d at 27. Although there was no mortgage loan originator license prior to enactment of the Missouri SAFE Act, Garozzo asserts that he had protected property interest in the form of a "de facto" license to engage in his profession. There is no such thing as a "de facto" license. The enactment of section 443.713(2)(a) did not deprive Garozzo of any property inter-

est without due process. Garozzo's right to procedural due process was triggered by the denial of his license application and was satisfied by the review process that has led to this appeal.

Garozzo also argues that the enactment of section 443.713(2)(a) changed the consequences of his guilty plea and that had he known that a guilty plea would prevent him in the future from engaging in his profession, he would have sought a different resolution. There is no right for the law to remain unchanged or "to be free from further collateral consequences of [a] prior guilty plea." *Young,* 362 S.W.3d at 391. The denial of Garozzo's license application did not violate his right to procedural due process.

### (b) Substantive Due Process

 Garozzo asserts that his right to substantive due process was violated because the denial of his license application was arbitrary, capricious and irrational. "The substantive due process component of the Fourteenth Amendment 'protects individual liberty against certain governmental actions regardless of the fairness of the procedures used to implement them.'" *Bromwell v. Nixon,* 361 S.W.3d 393, 400 (Mo. banc 2012)(quoting *Flowers v. City of Minneapolis,* 478 F.3d 869, 872 (8th Cir.2007))(quoting *Collins v. City of Harker Heights,* 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261(1992)). To establish a violation of an individual's substantive due process rights, the plaintiff must demonstrate that the state's conduct was conscience-shocking and violated "one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Id.,* quoting *Slusarchuk v. Hoff,* 346 F.3d 1178, 1181–

82 (8th Cir.2003). Garozzo cites no case supporting the proposition that the denial of a professional license to one who has pleaded guilty to a felony violates a deeply rooted fundamental right implicit in the concept of ordered liberty. Section 443.713(2)(a) does not violate Garozzo's right to substantive due process.

The residential mortgage board correctly denied Garozzo's license. The trial court's judgment is reversed.

RUSSELL, BRECKENRIDGE, FISCHER, STITH and DRAPER, JJ., concur.

WILSON, J., not participating.